## Harriet C. Yontef *v.* Stewart Yontef

Bogdanski, C. J., Peters, Healey, Parskey and Armentano, Js.

Argued June 11—decision released August 11, 1981

*William F. Gallagher,* with whom were *Elizabeth A. Dorsey* and *Randy L. Cohen,* law student intern, for the appellant (plaintiff).

*Charles G. Albom,* with whom, on the brief, were *Morton Kaplan* and *Elaine A. Braffman,* for the appellee (defendant).

PETERS, J. This is an appeal from a judgment in an action for dissolution of marriage in which custody of the minor children and ownership of the family home were awarded to the former husband. The plaintiff, Harriet C. Yontef, initiated the action seeking dissolution of her marriage to the defendant, Stewart Yontef, and asking for custody of the minor children, child support, alimony, a property assignment and counsel fees. The defendant counterclaimed, acknowledging the irretrievable breakdown of the marriage, but, in addition, charging the plaintiff with adultery.[1] The defendant also sought custody of the children, a property assignment, and counsel fees. After a hearing, the trial court, *Reynolds, J.*, rendered a judgment for the defendant, from which the plaintiff appeals. Before the plaintiff filed her timely appeal, the defendant obtained custody of the children and possession of the family home, in accordance with the judgment but in disregard of pendente lite orders predating the judgment. The plaintiff appeals also from the denial of several postjudgment motions arising out of these changes in custody and possession.

Because the appeal from the underlying judgment and the appeal from the post-judgment proceedings raise fundamentally different issues, we will deal separately with the factual background and the legal principles that relate to each. Separate memoranda of decision were filed, although all the proceedings were heard by the same trial court judge.

## I

With regard to the dissolution proceedings, the following facts were found by the trial court in its

[1] The plaintiff thereafter amended her complaint to include a second count charging the defendant with adultery.

memorandum of decision. The parties were married in 1966; by 1978, there was ample evidence that their marriage had irretrievably broken down. The court made no express findings on the charges of adultery.

On the issue of custody of the parties' two minor children,[2] the court first found that both the plaintiff mother and the defendant father were proper, fit and good parents. Having to choose between them, the court concluded that the defendant father was in a better position, with the aid of his parents, to provide a stable home life for his children. The court's determination was based in part on its finding that the plaintiff's testimony lacked credibility, and that this lack of credibility weighed against her in the court's concern for the best interests of the children. The court found unreasonable her allegations of financial deprivation, her recurrent complaints to the police, her employment of adolescent babysitters, her nocturnal activities, and her " 'I'll have it my way' " attitude. Upon the basis of all of these considerations, the court awarded the defendant custody and the plaintiff specified visitation rights.

Once it determined that the defendant should have custody, the court concluded that the defendant should also be awarded the marital residence so that the children would not be subjected to traumatic changes in their living arrangements and would be able to continue to attend their present school. The court found the defendant financially unable to maintain two homes, despite his excellent background in the real estate business, because of the depressed state of the real estate market. The

[2] The two minor children are David Yontef, born June 9, 1970, and Lori Yontef, born May 20, 1972.

plaintiff was therefore ordered to convey her interest in the marital home to the defendant, in return for lump sum alimony in the amount of $52,000 payable over ten years.[3]

The court made no other alimony award to the plaintiff, although it did order the defendant to pay $2500 as one half of her attorney's fees. The court took into account "her age, good health, station, occupational training, potential earning capacity, [and the] excellent market for employment with her educational background." The plaintiff, born in 1944, has a master's degree in elementary education. She worked as a full-time elementary school teacher until the birth of the parties' first child, and as a substitute teacher starting in the fall of 1978.

In her appeal from the judgment in the dissolution action, the plaintiff argues that the trial court abused its discretion in its award of custody and of the family home to the defendant. The plaintiff recognizes, as we have repeatedly held, that decision-making in family disputes requires "flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines." *Seymour* v. *Seymour,* 180 Conn. 705, 710, 433 A.2d 1005 (1980); *Joy* v. *Joy,* 178 Conn. 254, 255, 423 A.2d 895 (1979). Because the trial court must take into account both subjective and objective evidence of the causes of the breakdown of a marriage and of the various factors that go into a determination of the best

[3] According to the defendant's financial affidavit, the equity interest of the plaintiff in the family home was $46,350. In addition, the defendant owned other real estate, acquired during the marriage, that had a net equity of $14,300. The trial court might reasonably have relied on these figures to arrive at its $52,000 figure. The plaintiff has not, in her statement of issues, assigned error with regard to the present discounted value of this lump sum award.

interests of the children upon the dissolution of their parents' marriage; General Statutes §§ 46b-56 (b), 46b-81 and 46b-82;[4] our review of trial court determinations is perforce limited. "[T]rial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant." *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262, 413 A.2d 854 (1979); *Hardisty* v. *Hardisty,* 183 Conn. 253, 260, 439 A.2d 307 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980). It is a rare case in which a disappointed litigant will be able to demonstrate abuse of a trial court's broad discretion in family matters.

[4] "[General Statutes] Sec. 46b-56. (Formerly Sec. 46-42). SUPERIOR COURT ORDERS RE CUSTODY AND CARE OF MINOR CHILDREN IN ACTIONS FOR DISSOLUTION OF MARRIAGE, LEGAL SEPARATION AND ANNULMENT. (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o. The court may assign the custody of any child to either parent, to the parents jointly or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. The court may also make any order granting the right of visitation of any child to a third party including but not limited to grandparents.

(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation."

"[General Statutes] Sec. 46b-81. (Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such

In mounting her attack on the trial court's exercise of its discretion, the plaintiff points to four considerations which, she claims, demonstrate error in the trial court's custody order. The plaintiff asserts that the trial court: (1) failed to give sufficient weight to a family relations division report which recommended that she retain custody; (2) failed to give sufficient weight to its own finding, and the supporting testimony of witnesses other than the defendant, that she was a good mother and the children's primary psychological parent; (3) gave excessive weight to evidence concerning the plain-

real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

\* \* \*

(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

"[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

tiff's lifestyle; (4) and failed to seek independent advice through the appointment of an attorney to represent the minor children. Neither taken singly nor taken conjointly do these considerations demonstrate an abuse of discretion in the circumstances of this case.

It is true that the family relations division report, which was an exhibit in the proceedings before the trial court, recommended that custody of the minor children be awarded to the plaintiff. That report also noted, however, that both the plaintiff and the defendant had at times used poor judgment and exhibited manipulative and coercive behavior in their misguided efforts to involve the children in the marital dispute. To some extent, the custody recommendation reflected the defendant's inability, at the time the report was prepared, to provide suitable living accommodations for his children. Finally, the report discredited testimony by the defendant, which the trial court was free to credit, regarding the plaintiff's behavior and its effect on the children. We have never held, and decline now to hold, that a trial court is bound to accept the expert opinion of a family relations officer. As in other areas where expert testimony is offered, a trial court is free to rely on whatever parts of an expert's opinion the court finds probative and helpful. *Johnson* v. *Healy,* 183 Conn. 514, 515–16, 440 A.2d 765 (1981); *F. P. Carabillo Construction Co.* v. *Covenant Ins. Co.,* 172 Conn. 564, 566, 375 A.2d 1029 (1977); *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641 (1952). In family cases in particular, it would be anomalous to require a trial court to assign particular weight to a report which is based on statements that the trial court may evaluate differently and on circumstances that may have

changed. See *Seymour* v. *Seymour,* 180 Conn. 705, 710, 433 A.2d 1005 (1980). The best interests of the child, the standard by which custody decisions are measured, does not permit such a predetermined weighing of evidence. *Stewart* v. *Stewart,* 177 Conn. 401, 408, 418 A.2d 62 (1979); *Spicer* v. *Spicer,* 173 Conn. 161, 162, 377 A.2d 259 (1977); *Simons* v. *Simons,* 172 Conn. 341, 348, 374 A.2d 1040 (1977).

The plaintiff's second and third claims can best be addressed together, since they represent two faces of the same coin. The plaintiff maintains that the court failed to recognize her role as the children's primary psychological parent and overly emphasized her independent life style. No one denied that the plaintiff had been the children's primary caretaker during their early years, and the court in fact found her to have been a proper and fit parent at the time of the dissolution action. The court also found that the defendant had been a good father, within the limits of his responsibilities as the primary wage earner for the family. There was also evidence, however, that, as the marriage began to deteriorate, the plaintiff's involvement in activites outside of the home resulted in neglect of the children's personal needs.

Inquiries into psychological parenting and into life style are relevant insofar as they shed light upon the effect that a parent's behavior is having on a child's well-being. Although we have recognized the useful role that psychological evaluation can play in the determination of the best interests of a child, we have also noted that either or both parents can be, or can become, psychological parents of a child. *Seymour* v. *Seymour,* supra, 711–12; see generally Goldstein, Freud & Solnit, Beyond the

Best Interests of the Child (1979). The test is not which parent was the better custodian in the past but which is the better custodian now. See, e.g., *Trunik* v. *Trunik,* 179 Conn. 287, 290, 426 A.2d 274 (1979); *Spicer* v. *Spicer,* supra, 164; *Simons* v. *Simons,* supra, 350. Just as we have refused to adopt a conclusive presumption that a mother is always entitled to custody in preference to a father; see, e.g., *Simons* v. *Simons,* supra, 350; so also have we rejected any presumption that a parent's life style necessarily has an adverse effect on a child. *Gallo* v. *Gallo,* 184 Conn. 36, 42, 440 A.2d 782 (1981). In the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children of divorce, the court must however take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being. *Seymour* v. *Seymour,* supra, 711. The record does not support the plaintiff's claim that the trial court's determination was motivated by its desire to punish the plaintiff for her lifestyle rather than by its concern for the children's best interests.

The plaintiff's fourth claim is that the court erred in arriving at a judgment about custody, particularly one contrary to the recommendation of the family relations division report, without the benefit of independent counsel for the children. Although neither party requested the appointment of such counsel during the trial, the court had the authority to make such an order sua sponte. Just as the trial court in its discretion may decide whether or not to interview the children in order to ascertain their

preferences about living arrangements; see *Joy v. Joy,* 178 Conn. 254, 257, 423 A.2d 895 (1979); so the court has discretion to order the appointment of independent counsel to represent the children. See *Kearney v. State,* 174 Conn. 244, 251, 386 A.2d 223 (1978). The record does not disclose why independent counsel was not sought in this case. For the future, we suggest that, in the absence of strong countervailing considerations such as physical urgency or financial stringency, the better course is to appoint independent counsel whenever the issue of child custody is seriously contested. Landsman & Minow, "Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce," 87 Yale L.J. 1126, 1129–34 (1978); Berdon, "Child Custody Litigation: Some Relevant Considerations," 53 Conn. B.J. 279, 286–88 (1979). In this case, however, we cannot find the failure to make such an appointment so clear an abuse of discretion that the plaintiff is entitled to reversal of the custody order on that ground alone.

The plaintiff has made no showing legally sufficient to require reversal of the trial court's custody order. It is the trial court that must exercise its discretion to determine what is in the best interests of a child. On the record before us, we do not find that the trial court abused its discretion by awarding custody to the defendant father.

As the plaintiff recognizes, the court's order with regard to the family home followed from the award of custody. The plaintiff does not dispute the principles that govern property dispositions pursuant to General Statutes § 46b-81 (a). The court has the authority, in the exercise of its equitable discretion,

to fashion whatever property orders are required by the circumstances of the case. *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975). The court could legitimately consider the need of the custodial parent to provide a stable and familiar residence. *Collette* v. *Collette,* 177 Conn. 465, 470, 418 A.2d 891 (1979). A division of property is not an abuse of discretion just because it is weighted in favor of one or another of the marital partners. *Tsopanides* v. *Tsopanides,* 181 Conn. 248, 251, 435 A.2d 34 (1980).

The plaintiff nonetheless claims that the court abused its discretion in this case in ordering her to convey her interest in the jointly-owned family home to the defendant. She points to the husband's sole ownership of five other pieces of real estate, all investment property, all acquired during the course of the marriage, while she owned no other asset whatsoever.

At the trial, the defendant produced uncontradicted evidence which the trial court could have found credible to establish that the net equity in all his properties, including the interest in the family home, was worth approximately $60,000. His financial affidavit showed liabilities in excess of $35,000. The plaintiff, although left without property, was awarded $52,000 as lump sum alimony.

This record is sufficient to show that the trial court did not abuse its discretion in its financial orders. Under General Statutes §§ 46b-81 (c) and 46b-82 the court, in dividing family property and awarding alimony, must take into account many factors, including the court's determination of the cause of the marital breakdown. The memorandum of decision reflects the court's finding that it was

primarily the conduct of the plaintiff, rather than that of the defendant, that caused this twelve and a half year old marriage to come to an end. The court, having noted the plaintiff's good health, young age, educational achievements, and excellent employment opportunities, had no obligation to spell out in detail its weighting of the equities. *Scherr* v. *Scherr,* 183 Conn. 366, 368, 439 A.2d 375 (1981); *Posada* v. *Posada,* 179 Conn. 568, 573, 427 A.2d 406 (1980); *Fucci* v. *Fucci,* 179 Conn. 174, 181, 425 A.2d 592 (1979). The issue is not whether we would have made the same assessment, but rather whether the trial court was bound to take a different view. *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978); *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 (1910). It was not.

The judgment rendered in the dissolution action must be sustained. The plaintiff has failed to demonstrate a clear abuse of discretion in either the custody or the monetary parts of the court's decree.

## II

The appeal with respect to the postjudgment orders arises out of the following facts found in the trial court's February 26, 1980, memorandum of decision and in the record. The trial court's judgment and memorandum of decision in the dissolution action were filed on December 31, 1979. The plaintiff wife learned of the terms of the judgment on January 2, 1980; the defendant husband learned thereof the following day, January 3, 1980. Between January 2 and January 4, the defendant tried repeatedly but unsuccessfully to telephone the plaintiff and his children at the family residence, but the telephone line was busy whenever he called. On January 4, when the defendant was at last able

to speak to the plaintiff by telephone, she allegedly threatened to kill the children and to burn the house down. She then terminated their conversation, and the telephone was again busy whenever he called back. Concerned about the safety of his children, the defendant, armed with a certified copy of the memorandum of decision and accompanied by two local police officers, went to the family residence later that same afternoon. No one was then home, and the police left but the defendant remained. When the plaintiff and the children returned at about 6 p.m., an altercation ensued. The plaintiff called the police, the defendant called his parents, and both parties called their attorneys. Eventually the children left with their grandfather, the defendant left with his mother, and the plaintiff went to the emergency room at a local hospital, claiming that she had been beaten. Despite mutual charges of assault, neither party filed a formal complaint against the other.

With an affidavit relating this history, the defendant was able, on January 7, 1980, to obtain an ex parte order from the court, *Kinney, J.,* pursuant to General Statutes § 46b-38. On the basis of the defendant's allegation that he feared physical danger to his children and his home, the court issued an order restraining the plaintiff from harming the children and from entering the family house. Motions filed by the plaintiff that same day requesting the court to hold the defendant in contempt for the encounter on January 4, 1980, for return of certain property belonging to the plaintiff, for a restraining order against the defendant, and for counsel fees, were all scheduled to be heard at a later date. When the defendant, with a sheriff and two local police officers returned to the marital home

on January 7, the plaintiff's belongings had been removed, and the defendant, his children, and his parents took up residence therein. They have lived there since that time.

At a subsequent hearing before Judge Kinney, held on January 18, 1980, all of the plaintiff's earlier motions were in effect withdrawn. Her motion to dissolve the ex parte restraining order of January 7 was granted on the basis of a stipulation between the parties that until such time as the plaintiff filed an appropriate motion for custody pending the appeal[5] in the dissolution action, and a decision was reached thereon, the defendant was to have custody of the minor children and the right to exclusive occupancy of the family home, and the plaintiff was to have the right of visitation on Sundays.

As contemplated by the stipulation, the plaintiff then filed motions for: restoration of custody; alimony, support and use of the family home pending the outcome of the appeal; appointment of an attorney to represent the minor children; and counsel fees. All these motions were, after hearing, denied, except the motion to appoint counsel for the children. The defendant's motion to terminate the stay pending appeal, heard at the same time, was granted. The plaintiff now appeals from the denial of her postjudgment motions.

The trial court's memorandum makes clear that its decision on these motions was based, as had been its earlier judgment, on its finding that the defendant's evidence was more credible than that of the plaintiff. Although the plaintiff contested the defendant's version of the events of January 4,

---

[5] The plaintiff had filed her appeal on January 16, 1980.

1980, the court chose to accept the testimony offered by the defendant. Feeling itself bound, furthermore, by Judge Kinney's ex parte order, the court determined that "the best interest of the children and the due administration of justice . . . require that the children continue residing in the family residence, in the custody of their father, under the care of their grandparents. Continuity and structure in their lives [are] paramount."

Nothing on the present record would permit us to conclude that the trial court's postjudgment orders were in error. Once the children were residing with the parent to whom custody had been awarded, in the house which he had been awarded, it would have taken compelling circumstances to warrant their further dislocation while the appeal was pending. The plaintiff has presented no evidence so incontestably persuasive as to require overturning any of the court's orders as they related to postjudgment custody, use of the family residence, or alimony. The trial court's continued reservations about the plaintiff's credibility do not establish the plaintiff's claim that the trial court was prejudiced. Determinations about credibility are necessarily within the province of the trial court; *Gallo* v. *Gallo*, 184 Conn. 36, 38, 440 A.2d 782 (1981); *Lucy* v. *Lucy*, 183 Conn. 230, 233, 439 A.2d 302 (1981); *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 262–63, 413 A.2d 854 (1979); that such a determination is made adversely to a litigant does not prove that she has been deprived of a fair trial. Nor was the plaintiff deprived of a fair trial by her cross-examination by the defendant's attorney which, although occasionally ranging far afield, was not likely, in the circumstances of this case, to have improperly influenced the trial court. In

family matters, heard by an experienced judge, we may presume that irrelevant asides will be disregarded in the framing of the trial court's orders. *Ghiroli* v. *Ghiroli*, 184 Conn. 406, 408–409, 439 A.2d 1024 (1981).

We take this opportunity, however, to comment upon the procedure used by the defendant to effect a change of custody, since that change in the status quo figured significantly in the orders subsequently entered by the trial court. That change took place on January 4, 1980, without the benefit of any court order, at a time when, under Practice Book § 3065,[6] the judgment rendered on December 31, 1979, was automatically stayed for a period of 20 days. It is no longer possible to ascertain to what extent the defendant's actions on that day were properly motivated, since they elicited from the plaintiff, the trial court found, corroborative evidence of her intent permanently to resist the judgment rendered. Still, the plaintiff was on January 4 not as yet bound to obey the court order and was entitled, upon taking an appeal, to a further stay until such a stay might,

[6] Practice Book § 3065 provides: "Sec. 3065. ——IN GENERAL In all actions, except criminal actions and actions concerning child neglect brought pursuant to chapter 37, proceedings to enforce or carry out the judgment shall be stayed for twenty days; if the time in which to take an appeal is extended under Sec. 3097 such proceedings shall be stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment in the supreme court, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that the extension is sought or the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated. This section shall not apply to orders of a court rendered on an application for a prejudgment remedy nor shall it apply to dispositions in delinquency matters. In appeals from such matters there shall be no stay unless the judge making the disposition grants one."

after a hearing, be terminated. Practice Book § 3065. A mother can hardly be faulted for not readily relinquishing the custody of her children after a bitterly contested custody fight, absent any present legal obligation to do so, particularly when she had had custody pendente lite. Even the protective order entered ex parte by Judge Kinney on January 7, 1980, did not expressly order her to surrender custody immediately but only restrained her from harming her children.[7]

In the absence of judicial instruction, the rights of parents to use self-help to effectuate custody changes after judgment and before appeal are unclear. We have previously held that pendente lite orders of alimony, and inferentially of custody, do not survive the rendition of a judgment. *Tobey* v. *Tobey*, 165 Conn. 742, 745, 345 A.2d 21 (1974); *Saunders* v. *Saunders*, 140 Conn. 140, 146, 98 A.2d 815 (1953). The judgment itself, stayed by the rules of the Practice Book § 3065, is not binding for twenty days. In this twenty-day gap period, the parties arguably may revert to their common law rights, under which both are entitled, without preference, to take custody. Such a resolution is not only unseemly but is inconsistent with the concern, repeatedly enunciated in the statutes and the cases, for the best interests of the children. General Statutes § 46b-56; *Agnello* v. *Becker*, 184 Conn. 421, 428-29, 440 A.2d 172 (1981); *Seymour* v. *Seymour*, supra, 712; *Simons* v. *Simons*, supra, 347.

A trial court rendering a judgment in a disputed custody case should therefore consider entering protective orders sua sponte to ensure an orderly tran-

[7] The stipulation entered into on January 18, 1980, makes that order not directly reviewable, since the plaintiff then acquiesced, for the time being, in the change of custody that had occurred.

sition that protects the primary interests of the children in a continuous, stable custodial placement. It is true that the parties themselves may present postjudgment motions to continue or to shift custody, while an appeal is pending, but time is required for such motions to be calendared and heard. In the meantime, when anxieties and disappointments are likely to be great, the temptation for disruptive self-help is large. We have previously recognized that the emotionally laden circumstances that surround marital dissolutions impose a special burden on trial courts to conduct a searching inquiry into the acceptability of a divorce settlement. *Monroe* v. *Monroe,* 177 Conn. 173, 184, 413 A.2d 819 (1979). We now extend that burden to encompass as well a searching inquiry into the best interests of the minor children during the immediate postjudgment period.

Although there is no express statutory authority for a trial court to enter postjudgment orders, this court has recognized the inherent authority of a court to preserve rights pending an appeal. In *Saunders* v. *Saunders,* in which this court held (p. 146) that a judgment of divorce "disposed with finality of all interlocutory orders," we conceded, without discussion, the power of the trier to entertain an application for an allowance to prosecute an appeal. *Saunders* v. *Saunders,* supra, 145; see also *Dochelli* v. *Dochelli,* 125 Conn. 465, 466 n.1, 3 A.2d 666 (1939). A month later, a divided court expressly affirmed the inherent equitable authority of a trial court to make an allowance for counsel fees and expenses of litigation in matters pertaining to divorce actions. *Krasnow* v. *Krasnow,* 140 Conn. 254, 261–63, 99 A.2d 104 (1953). We there held (p. 262) that "[t]he fact that there is no statute pro-

viding for an allowance in a divorce action is not
decisive. The question is whether the power to make
an allowance continues after the original decree,
regardless of whether that power is inherent in the
court, as some of the cases hold, or is granted by
statute. As the jurisdiction of the court to modify
the decree in matters of alimony and custody is a
continuing one, so too, in reason and justice, is its
power to make an allowance when these matters are
again in issue after the final decree. The interest
which the state has in every divorce action, par-
ticularly where minor children are involved, is fur-
ther reason for adopting this procedure in order
to ensure a full presentation of the case." Authority
to award postjudgment attorney's fees has now
become statutory; see General Statutes § 46b-62;
but the reasoning of *Krasnow* v. *Krasnow* is equally
if not more persuasive when the issue is postjudg-
ment custody orders. Certainly the exercise of such
authority is fully consistent with the power con-
ferred upon the Superior Court in § 46b-56, after
the initiation of a dissolution action, whereby "the
court may *at any time* make or modify any proper
order regarding . . . custody . . . ." (Emphasis
added.)

In the interest of minimizing the emotional
trauma so often imposed upon the children of
divorce, a trial court should, at or before the time
of its judgment, inquire whether its custody order
is apt to be acceptable to the parties or is apt to be
further litigated upon appeal. If an appeal appears
likely, the court should enter whatever interim post-
judgment order it deems most appropriate, in the
exercise of its broad discretion, taking into con-
sideration the needs of the minor children for con-

tinuity, stability and well-being as well as the need of the parent who appeals for a fair opportunity fully to present his or her case. These legitimate needs are not, in all probability, apt to be protected if dissatisfied parties are able to intervene unilaterally, without judicial supervision, to effect changes in custody pending appeal. A court exercising its equitable jurisdiction with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children for the near as well as for the more distant future.

In the present case, however, there has been no abuse of the trial court's discretion, since the possibility of interim postjudgment custody orders was never called to the trial court's attention. The court did not err in denying the motions thereafter made by the plaintiff once the defendant had obtained custody.

There is no error.

In this opinion the other judges concurred.