[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. CT Page 4858
The 53 year old plaintiff husband and the 47 year old defendant wife intermarried on November 11, 1973 at Waterbury, Connecticut. Both parties satisfy the residence requirement conferring jurisdiction on this court. Only the two children issue of the marriage have been born to the defendant since the marriage: Kelly, born September 11, 1979 and Nicole, born July 8, 1983. For reasons that will be discussed in this opinion, the court is satisfied that the parties' marriage has broken down irretrievably, as alleged in the second count of the plaintiff's complaint.
 II.
The plaintiff has been employed by G. Fox in their Waterbury store for over 20 years. He has also worked part-time as a substitute teacher at Kaynor Tech. High School.
At the time of the marriage, the defendant was a hairdresser and was licensed as a teacher of hairdressing. She continued to work until August, 1979. The defendant entered nursing training in 1985 after completing certain prerequisites in 1984. She was able to obtain grants to pay for two years of nursing training and in 1987 received an associate's degree as a registered nurse. She has worked at a Torrington hospital on the third shift three nights and one second shift weekly. This schedule has allowed the defendant to drop the children off at school and to pick them up after school. She earns $21 hourly on the third shift.
The defendant acknowledged that she and the plaintiff shared the parenting. While the defendant was attending school as a full time student, the plaintiff cared for the children and also declined to work at Kaynor Tech, but was not the exclusive caretaker, for the defendant's aunt and the defendant's mother sometimes baby sat.
The plaintiff has an associate's degree and requires three credits to be awarded a bachelor's degree. During his employment at the local G. Fox store, he was offered promotions on three occasions. He declined the offers since each involved relocation to another store. All three offers came at times prior to the defendant's nurse's training. The plaintiff was offered a manager's position which he declined since it would have entailed weekend work and the loss of his part time teaching job. The salary, however, would have been $10,000 higher to start. At the present time, he is earning just under $9 hourly for 35 hours weekly, including one evening weekly and one Saturday monthly. He earned $15,500 working at G. Fox in 1990 and, based on his average gross wage given on his financial affidavit, he is earning annual gross wages of $15,600 currently. He did no substitute teaching CT Page 4859 in 1991.
 III.
The court finds, from the credible evidence, that the marriage has broken down primarily as a consequence of the defendant's association with another man, a plumber by the name of Romaniello, who came to the parties' residence to repair a vent line in November, 1989, (Plaintiff's Exhibit A, plumbing bill). Mr. Romaniello performed more plumbing work in January, 1990.
The plaintiff's sister, Mrs. Janice Johnson, testified that she observed the defendant's auto parked outside Mr. Romaniello's apartment house in the summer of 1990. She did not tell the plaintiff.
The plaintiff was developing suspicions that the defendant's affections were being directed elsewhere during these months. The defendant expressed feelings of unhappiness to the plaintiff and stated to him she didn't want to be married. The parties began sleeping in separate bedrooms.
On November 2, 1990, the defendant left home for her job at the Torrington hospital. She did not go to the hospital. She called in sick and went to Mr. Romaniello's apartment. The plaintiff learned of the sick call-in when he called the hospital. The plaintiff and his younger brother then drove to Mr. Romaniello's apartment where they found both the Romaniello's auto and the defendant's auto parked. The brother, Richard Martinelli, stayed at this site from 1:00 a.m. until 7:00 a.m. The defendant's car remained parked all night. When the defendant returned home, the defendant stated to plaintiff, in response to his inquiry, that she made a mistake.
On one of the days following, the plaintiff overheard the defendant talking on the telephone to Mr. Romaniello. This lawsuit was started by summons signed on November 9, 1990 and served on the defendant on November 15th.
The defendant denied that she was at Mr. Romaniello's all night although she admits calling him and going for coffee on that evening after driving to his apartment house. She then testified to visiting a distant cousin in Bristol all night. The court finds such explanation unbelievable, as was the testimony of Mrs. Waters, the defendant's cousin. Mr. Romaniello, who also testified, was not a persuasive witness.
 IV.
Each party is seeking sole custody. The plaintiff has CT Page 4860 participated in the children's daily activities since they were born, as has the defendant. The plaintiff has not competed for either child's affection and had done nothing to interfere with either child's relationship with the defendant. The defendant has not displayed the same willingness to encourage a continuing and ongoing relationship between each child and the plaintiff. Except for this difference, both parties are suitable and nurturing parents.
The court must be guided by what is in the best interest of the children, 46b-56, Connecticut General Statutes; Seymour v. Seymour, 180 Conn. 705, including the causes for the dissolution, if relevant. The court finds the defendant's behavior in regards to Mr. Romaniello relevant in determining custody. Her incredible explanation in attempting to deny or explain such behavior was less than candid and, in the court's view, impacts negatively upon the defendant's ability to teach her children to be truthful.
The court proceeded to trial without an available custody report, Cotton v. Cotton, 11 Conn. App. 189, 193 for none was ordered. Mediation only was ordered and completed. An attorney for the minors was appointed, Yontef v. Yontef, 185 Conn. 275 who participated fully in the trial.
Based on all that is in front of the court, it is found that it is in the best interests of both children that they reside with their father as custodial parent.
 V.
The parties purchased their home in 1975 for $33,900 with the plaintiff providing $12,000 and the defendant providing $4,000. At present, the fair market value of the home is found to be $120,000. It is encumbered by a first mortgage balance of $5,000 and a second mortgage equity credit line of $4,500.
The plaintiff has vested pension rights valued at $14,500 with earliest access at age 55.
The defendant owns 40 shares of N.E. Utilities valued at $2,800 and bank accounts valued at $1,000. There is a custodial account for a daughter for $1,000 listing both parties as custodians.
 VI.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered on the second count of the CT Page 4861 plaintiff's complaint on the ground of irretrievable breakdown. The first count is dismissed as moot. The cross complaint is dismissed as moot.
2. Sole legal custody and sole physical custody of the two minor children, Nicole and Kelly are awarded to the plaintiff. The defendant is awarded reasonable visitation rights.
3. The defendant is ordered to pay to the plaintiff as child support the sum of $240 weekly, which is based on the guidelines.
4. The plaintiff is ordered to carry the two minor children on his available medical insurance at his place of business. The parties are ordered to pay equally for any unreimbursed or uninsured bill balances for medical care of the children.
5. The defendant's interest in the real estate known as 160 Juniper Ridge, Waterbury, Connecticut is ordered transferred to the plaintiff who shall assume the encumbrances thereon. The plaintiff is ordered to pay to the defendant the sum of $50,000, due on or before September 15, 1992.
6. The parties are directed to divide the personal property contained in the marital home. In the event that the parties are unable to do so, they shall prepare a list of items of tangible personal property in dispute and submit same to the court for a hearing to determine the division to be made.
7. The defendant shall retain as her sole property the shares of Northeast Utilities.
8. Each party shall retain the pension rights each has at the present time.
9. Each party shall retain the motor vehicle presently registered to that party.
10. Each party shall be responsible for the liabilities listed on that party's financial affidavit.
11. No periodic alimony is awarded to either party.
12. The parties shall otherwise retain as their sole property all items presently in their respective possession. The court makes no finding regarding certain jewelry claimed to have been in the possession of the plaintiff by the defendant for the court finds such claim unproven.
13. The attorney for the minors is awarded $3,600 for his CT Page 4862 services. Each party shall pay $1,800 within 60 days of this date.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.