[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on the plaintiff's motion for a psychiatric evaluation of the defendant (No. 105), and the defendant's motion for alimony, support and custody pendente lite (No. 110). The plaintiff's motion for custody study (No. 106) was granted on February 21, 1995.
The evidence presented indicated that the wife was sexually assaulted in October of 1988 by her then therapist, a Dr. Friedman, with whom she had been treating since April of 1988. According to the defendant, she repressed the memory of this incident until sometime in 1992 when she began experiencing nightmares and memories of the sexual assault. In this same year, the parties began going to marriage counseling and the defendant started recalling more details of the sexual assault incident, including flashbacks. The defendant then began seeing a psychologist and a psychiatrist to deal with the post-traumatic syndrome. At the time of this hearing, she was seeing a therapist once a week and last saw a psychiatrist in January of 1995.
In the fall of 1993, the defendant moved to live with her parents with the parties' two minor children, Meghan, born May 31, 1990; and Michael, born October 2, 1991. In approximately July of 1994, she moved back with the children to live with the plaintiff. Difficulties between the parties ensued and the plaintiff commenced this action for dissolution in early December, 1994. By late December, both parties were before the court on applications for relief from abuse. On December 21, 1994, the court (Moraghan, J.) entered mutual restraining orders which included that the defendant was to refrain from entering the family dwelling, the defendant was granted temporary physical custody of the children at her parents' home, without prejudice to future orders, and the plaintiff was awarded reasonable, liberal and flexible visitation on alternating weekends from 9:00 a.m. on Saturday to 6:00 p.m. on Sunday, and on the other weekends from Saturday at 9:00 a.m. to Saturday at 6:00 p.m. This order further provided that there was to be no interchange between the parties in transporting the children for visitation.
The defendant's parents' home in Garrison, New York, was CT Page 9276 approximately a fifty minute minimum trip from the parties' marital residence where the plaintiff continued to reside. At the time of this hearing, the defendant had just moved with the children to a two-bedroom apartment where the children share a bedroom. One sister, a social worker, is approximately thirty minutes away and another, a teacher, is approximately forty minutes away. Since January of 1995, Meghan had been attending pre-school three days a week and Michael was attending a nursery school two days a week. The defendant's current residence is approximately thirty-five minutes away from the plaintiff's residence.
The plaintiff is employed as an insurance agent with Massachusetts Mutual Life Insurance Co. His office is in Shelton, an approximate forty-five minute drive from his residence. His work days are generally Monday through Friday and his work load primarily consists of meeting with clients, paperwork and planning. On an average work day the plaintiff is out of his home by 6:45 a.m. and returns home sometime after 7:00 p.m. The plaintiff seeks residential custody of the minor children due to his concern about the defendant's ability to care for them based upon the state of her mental health. If granted residential custody, he planned to have the children cared for by a licensed day care provider in Danbury at a cost of $225 per week. He testified that his parents were willing to assist him in meeting the cost of this child care and that he could adjust his work hours as well as the location of much of his work since he is self-employed.
The defendant is currently unemployed outside of the home but receives temporary social security disability payments of $464 per month for herself and $120 per month for the children. The plaintiff's average gross income calculated over a twelve (12) month period is reflected on his financial affidavit at a gross weekly figure of $430.50.
The plaintiff described the history of the defendant's mental health and the treatment of same noting that in the years 1993 and 1993, she was in and out of six different hospitals. He questions the defendant's ability to care for the children without the "safety net" of her parents.
The parties disagree on the history of involvement with the children while they were all living together. The plaintiff claims that they equally shared activities such as bathing the CT Page 9277 children, reading to them and cleaning. The defendant claims that, from the time of the move back to Connecticut in the summer of 1994 to the separation in December, she assumed and performed all responsibility for the household and care of the children. Specifically, she testified that in the month of August, the plaintiff never returned home until after 9:00 p.m. She described herself as the primary caretaker of the children, noting that hers was always the first face they saw in the morning and the last face they saw at night. The defendant testified in great detail about her mental health history, summarizing it as a difficult period which had a beginning and an end in the spring of 1994, noting that there were no incidents with her mental health after her return with the children to Connecticut in the summer of 1994.
Section 46b-56(a) of the General Statutes authorizes the court to make orders as to the care, custody and visitation of minor children. In deciding such matters, section 46b-56(b) mandates that the court be guided by the best interests of the child. Although the term "best interests" is not clearly defined in the statutes, the decisional law indicates that the focus is on the child's growth, development and well-being. Yontef v.Yontef, 185 Conn. 275, 283 (1981).
In searching for the best interests of the Schneider children, the following factors were of relevance: the age of the children; their physical living environment; their adjustment to home and school; the emotional ties of the children to the parties and the parties to the children; the relationship between the children and any other individuals who may significantly affect their best interests; the parenting abilities of the parties; the desirability of maintaining continuity of existing relationships and the effects of disrupting same; the wishes of the parents; the emotional health of the defendant; and the options for alternative care such as day care and/or other family members.
The subjects of these proceedings are Meghan, not quite five years old at the time of the hearing, and Michael, three and one-half years of age. Although the children were present and may have observed their mother's removal from the home to be hospitalized in the summer of 1993, there was no evidence presented that their observations had any adverse effect. The children, during their short lifetimes, have spent substantial periods of time with the maternal grandparents. With the CT Page 9278 exception of the recent introduction to pre-school and nursery school, there was no evidence of the children ever having experienced the care of anyone other than family members. After sharing one bedroom with the children at her parent's home for months, the defendant has relocated to an apartment, approximately one-half hour from the plaintiff's residence, while still remaining close to other family members. Based on the foregoing, the physical residence of the minor children shall be with the defendant.
The parties both appear to love their children and share a concern to provide the best possible environment for them. Joint legal custody shall be awarded pendente lite. The parties are encouraged to communicate with one another on matters related to the care, education, health and general well-being of their children. The plaintiff shall have shared time with the children as follows: Alternating weekends from 9:00 a.m. on Saturday to 6:00 p.m. on Sunday; on the other weekends from Saturday at 9:00 a.m. to Saturday at 6:00 p.m.; one day per week from 3:30 p.m. to 7:00 p.m. which shall be at the selection of the plaintiff giving at least seven days notice to the defendant of the day selected. The defendant shall be responsible for transporting the children for all Saturday morning deliveries. The plaintiff shall be responsible for the transportation for the Saturday or Sunday evening returns of the children and any transportation involved in the week day visit.
The plaintiff's motion for psychological evaluation of the defendant is denied at this time.
The court accepts the calculation of income compiled by the plaintiff and his counsel as reflected on his financial affidavit and the Child Support Guidelines calculation attached thereto as a reasonable method of fairly calculating his current self-employment income. Accordingly, the plaintiff is ordered to pay as child support the sum of $72 per week commencing September 1, 1995. In making this order, including the date of commencement, the court has not included the temporary social security disability income received by the defendant.
Dennis, J. CT Page 9279