[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This case presents the increasingly common and always CT Page 8435 difficult issue of the impact on custody and visitation orders when, subsequent to the entry of those orders, the custodial parent and minor children relocate a substantial distance from the noncustodial parent.
A decree of dissolution of marriage (the "Decree") was entered in the above-captioned by this Court, J. Conway, on August 2, 1990. The motion presently before the Court is the motion of the Defendant father (the "Defendant"), filed on July 3, 1995, wherein he seeks a modification of the custody and visitation provisions of the Decree (awarding custody of the minor children to the Plaintiff mother (the "Plaintiff")) as a result of Plaintiff's relocation, with the minor children, to South Carolina.[1]
 FINDINGS OF FACT
The parties were married on April 21, 1984, and subsequently had two children, Kristina and Jeremy, in 1984 and 1987, respectively. Plaintiff commenced an action for dissolution of marriage in November of 1988, and the Decree was entered in August of 1990. Prior to the entry of the Decree, Family Relations conducted a custody study and issued a report (Defendant's Exhibit 2) recommending that the Plaintiff have custody of the minor children (then three and five years of age) subject to reasonably substantial, but specified, rights of visitation in the Defendant (including, but not limited to, three out of every four weekends and several weeks each summer). The nature and extent of the visitation which Family Relations proposed for the Defendant was facilitated by the relatively close proximity of the parties' respective homes, and the Family Relations report specifically proposed that each party be required to provide the other with sixty days prior written notice of any intent to relocate his or her respective residence to any other state (provided, however, that the Plaintiff, who was then residing in Rhode Island, could relocate to Connecticut without such prior written notice). The recommendations contained in the Family Relations report regarding custody and visitation were approved and ordered by the Court incident to the dissolution of the parties' marriage embodied in the Decree.
Subsequent to the entry of the Decree, and leaving aside the move to South Carolina which prompted these proceedings, infra, the Plaintiff and minor children, at various times, either rented a residence in Rhode Island or lived with the Plaintiff's mother CT Page 8436 in Connecticut (all such residences being in reasonably close proximity to the Defendant). Kenneth Pope, Plaintiff's husband since 1993, has resided with the Plaintiff and the minor children since the date of the Decree and for a period of time prior thereto as well. Plaintiff and Mr. Pope have had a child, Amanda, presently four years of age, with whom Kristina and Jeremy have a good relationship. Plaintiff and Mr. Pope are expecting another child in December. Plaintiff has not engaged in any significant employment since she and the Defendant separated, having subsisted, at various times and to varying degrees, on state aid, child support payments from the Defendant[2], and support provided by Mr. Pope.
Since the entry of the Decree, the Defendant has resided in the Norwich area, including the past four years at the same residence in Norwich. He shares that residence with his fiancee, Debbie Campbell, and her 11-year-old son, Chad.[3] Kristina and Jeremy have a good relationship with Ms. Campbell and Chad. The Defendant is a carpenter by trade who presently earns approximately $250 per week. Ms. Campbell is a medical receptionist.
Kristina and Jeremy have their roots in this area. In addition to having resided here all of their lives until June of 1995, infra, their parents (Plaintiff and Defendant) have spent much, if not all, of their lives here. The paternal grandparents live in this area and have a good relationship with both of the children. When Kristina and Jeremy were here this past summer for extended visitation, the paternal grandparents cared for them (as well as Chad) during the day (when the Defendant and Ms. Campbell were at work) and will be available to provide similar assistance in the future throughout the school year if the children have their principal residence with the Defendant. The maternal grandmother likewise lives in this area (as did the maternal grandfather until his passing earlier this year). The children appear to have a good relationship with their maternal grandmother.
Notwithstanding the entry of the Decree, the parties remained in conflict (the Plaintiff's complaints focusing on the Defendant's allege failure to comply with the support provisions of the Decree; the Defendant's complaints centering on Plaintiff's failure to comply with the visitation provisions of the Decree). Mr. Pope has significantly contributed to the difficulties which the Defendant has experienced in exercising CT Page 8437 his visitation and otherwise maintaining the good relationship he has with the children. The simple act of meeting to "exchange" the children for purposes of visitation was often made difficult by Mr. Pope. On other occasions, Mr. Pope showed up at the Defendant's residence to instigate fights. Subsequent to Plaintiff's move to South Carolina, Mr. Pope would often interfere with Defendant's telephone calls to his children. At other times, Mr. Pope would make harassing telephone calls to the Defendant's home.[4]
Plaintiff, by her own actions or inaction, likewise contributed to the problems experienced by the Defendant. For example, the Defendant, in an effort to address the problems he was experiencing with Mr. Pope at the visitation exchange, enlisted the aid of Family Relations. The parties, with the assistance of Family Relations, entered into an agreement pursuant to which Mr. Pope was not to be present at such exchanges. Notwithstanding this agreement, the Plaintiff continued to bring Mr. Pope to some of the visitation exchanges (resulting in further conflict). Similarly, Plaintiff was aware of, and either did not or could not prevent, the telephone abuse endured by the Defendant (Mr. Pope's harassing telephone calls as well as his interference with calls between the Defendant and the minor children). That the Plaintiff and Mr. Pope were of a similar mind and intent regarding the Defendant's place in the children's lives is evident from a conversation which they had, overheard by Kristina, wherein they discussed their opposition to the children having visitation with the Defendant.
Mr. Pope's role in this matter takes on far greater proportions in assessing the need for and good faith of the relocation to South Carolina which prompted the instant proceedings. In late June of 1995, the Plaintiff and Mr. Pope, together with their minor child, Amanda, precipitously, and without prior notice to the defendant, left Connecticut and relocated to South Carolina. Plaintiff left Kristina and Jeremy behind with her mother in a purported effort to comply with the sixty day notice provision contained in the Decree (although the children subsequently joined her in South Carolina well before the passage of the 60 day period). At trial, the Plaintiff furnished no credible explanation for the move. Neither she nor Mr. Pope had friends or family in South Carolina. Neither of them had any employment lined up prior to leaving Connecticut nor had any living accommodations been arranged. Although Plaintiff claims such a move had been under consideration since January of CT Page 8438 1995, no mention of the same was ever made to the Defendant.[5]
This Court does not find Plaintiff's testimony regarding the motivation for the move to South Carolina to be credible. Rather, this Court finds that the sudden relocation to South Carolina was prompted by Mr. Pope's arrest on criminal charges (relating to his unlawful operation of a motor vehicle) which carried a mandatory period of incarceration and a lengthy suspension of his operating privileges. The evidence concerning the pendency of these charges and Mr. Pope's failure to appear in court regarding the same (as a result of his flight to South Carolina) was uncontroverted.
The Defendant, following Plaintiff's unannounced departure from this jurisdiction, immediately moved for relief before this Court regarding custody of and visitation with the minor child. Although Plaintiff appeared through counsel in respect of the motions filed by the Defendant, she did not personally appear before the Court[6] or otherwise comply with this Court's orders and was subsequently adjudged to be in contempt. After an unsuccessful effort to have the courts in South Carolina assume jurisdiction over this matter, the Plaintiff finally appeared before this Court on April 2, 1996. At that time, temporary orders were entered by agreement pursuant to which, inter alia, (i) a custody study was ordered (to be conducted both in Connecticut and South Carolina), (ii) the children were to finish the school year in South Carolina, (iii) the children were to reside with the Defendant for the summer, and (iv) the matter was to be set down for trial. The children did reside with the Defendant throughout the summer, during which time the Defendant (a) accommodated visits by the children with their paternal grandparents and maternal grandmother, and (b) permitted the Plaintiff to have the children during the week in August when she was in Connecticut in connection with these proceedings.
Based upon the completed custody studies conducted in Connecticut and South Carolina (Minor Children Exhibits A-1 and B-1), it appears, inter alia, that: the children have adjusted to their new surroundings in South Carolina, (including neighborhood, school and church); their home is reasonably well kept and their physical needs are being met; the children both love the Plaintiff and Defendant and want to spend time with each of them; the children share a closer bond with the Plaintiff and express a need to be with her; they prefer to reside with the Plaintiff during the school year and with the Defendant during CT Page 8439 the summer; the references furnished by each of the parties offered, for the most part, positive remarks about the parties. Although the Court has made limited observations herein concerning the Connecticut and South Carolina custody evaluations, all of the information contained in each of those evaluations, as well as the 1990 Connecticut evaluation (Defendant's Exhibit 2) and the December 1995 Connecticut report (Defendant's Exhibit 3) was carefully reviewed and considered by the Court. The Court finds each of the evaluations to be thorough and well done.
The family relations officer who conducted the Connecticut evaluation, Mr. McKeever, is a capable and experienced family relations officer who has a long history with these parties and the children. He believes the parties are good parents and that each has a good relationship with the children and can care for the children. Mr. McKeever recommends, inter alia, that the children continue to reside with the Plaintiff during the school year and with the Defendant during the summer. This recommendation is based largely upon the bond which exists between the Plaintiff and the children and her role, at least as perceived by the children, as the parent who provides nurturing. But for the substantial weight which he accords to the foregoing considerations, Mr. McKeever would have recommended, without any difficulty at all, that the children have their primary residence with the Defendant. Mr. McKeever describes this matter as a "difficult case".
A number of other concerns surfaced at trial. Much was made of Mr. Pope's "drinking problem" and, indeed, it appears that such a problem may have existed prior to the relocation to South Carolina. However, Mr. Pope's subsequent conduct as well as a recently conducted alcohol evaluation to which he submitted suggests that whatever problem may have existed has substantially abated. Further, concern was expressed by the Defendant regarding the children's absences from school. While the children's attendance at school has improved somewhat since the move to South Carolina, it remains somewhat excessive. Finally, the children have indicated in the presence of their counsel as well as the Defendant that, while they are not afraid of Mr. Pope, they are fearful of him insofar as their mother (the Plaintiff) is concerned. Although the Court has concerns with all of these issues, its decision is driven to a large extent by the considerations set forth below.[7]
CT Page 8440
DISCUSSION
In addressing the modification of existing custody orders, a trial court must find that there has been a material change of circumstances which alters the best interests of the child.Trunik v. Trunik, 179 Conn. 287, 289-90, 426 A.2d 274
(1979).[8] Once such a material change in circumstances has been demonstrated, the issue of custody becomes reviewable with the overarching standard remaining the best interests of the child.
At the time the Decree entered, the parties were, and for many years had been, residing in this area (in relatively close proximity to each other). The children were born and had always resided in this area. The visitation orders entered by the Court envisioned ongoing regular contact between the Defendant and the children. As a result of Plaintiff's decision to relocate to South Carolina, the children reside almost a thousand away from this area and have infrequent contact with their father. They left behind everyone and everything they had ever known. Under these circumstances, the Court finds that the relocation of the children to South Carolina constitutes a material change of circumstances. Consequently, the Court must next address the best interests of the children under the circumstances as they presently exist.
The Court has considered the myriad of factors involved in determining the best interests of the children. In addition to all other factors to be considered in any custody proceeding, relocation cases raise, or accentuate, numerous other considerations including, without limitation, the following: the desired continuity of regular contact between the child and each of the parents; the reasons for the relocation; the relative advantages and disadvantages of the relocation insofar as the child is concerned; the history of the relationships between the child and each of his or her parents; the impact of the relocation on the noncustodial parent's visitation rights and the ability of the noncustodial parent and the child to maintain a meaningful relationship notwithstanding the distance which may separate them; the views of counsel for the minor child and any experts, including family relations officers, who have conducted an evaluation. The Court, in reaching its conclusions, has carefully considered all of these factors. The weight to be accorded any individual factor will vary from case to case depending on the unique circumstances of each case. CT Page 8441
In addressing the modification of custody and visitation orders as a result of relocation, a logical starting point is the reason or reasons which prompt the relocation in the first instance. This Court believes that, absent unusual circumstances, it is generally in the interest of the child to have regular, meaningful contact with two involved and interested parents who offer the child love, care and guidance. This ideal, albeit extremely significant in most instances, is not necessarily dispositive of the best interests of the child. A realistic assessment of contemporary life must recognize that the world in which we live has become a smaller place and people have become increasingly mobile. The reasons for this mobility are many including, without limitation, job opportunity, the frequency of second marriages/relationships between individuals residing in different parts of the country, health considerations and the like. While the focus is on the best interests of the child, and not either of the parents, it is possible that the benefits which relocation may offer to the relocating parent may enhance the child's life economically, emotionally or educationally, such that the relocation may be found to be in the best interests of the child. Consequently, the analysis begins with a balancing of (i) the ideal of both parents having regular, meaningful access with the child and (ii) the reasons which prompt the relocation.
As previously discussed, this Court finds that the Plaintiff and Mr. Pope relocated to South Carolina because of certain charges then pending against Mr. Pope in the courts of this State. The Court cannot conceive of a less valid reason for relocation than flight for purposes of avoiding prosecution. The actions of the Plaintiff in this regard are disturbing for another reason. In choosing to leave for the purpose and in the manner described above, the Plaintiff thought only of herself and Mr. Pope and gave virtually no thought to the interests of the children. The Plaintiff uprooted the children from their father, their maternal and paternal grandparents, their friends and their school to go to a jurisdiction where neither she nor Mr. Pope had any home, family, friends or identified prospects of employment. Simply stated, Plaintiff disregarded the interests of the children in order to join Mr. Pope in his flight from this jurisdiction.[9]
Even if the Plaintiff had demonstrated a more compelling reason for moving, this Court would nevertheless remain troubled by the prospect of this relocation. As previously indicated, this CT Page 8442 Court believes that, except in unusual circumstances, it is in the interest of a child to have regular, meaningful contact with each of his or her parents. When relocation occurs and that ideal cannot be achieved, however, it remains important that the relationship between the child and the noncustodial parent (whomever that may ultimately be) be preserved and maintained. Consequently, in relocation cases, a determination as to which parent is more willing to facilitate the other's visitation and foster (or at least not undermine) the other's relationship with the child often takes on added significance. In this case, the Court has serious reservations regarding the Plaintiff's willingness to facilitate the Defendant's visitation and foster his relationship with the children. In evaluating the parties' respective present and future parenting skills, the Court may take into account each parent's past behavior. Yontef v. Yontef,185 Conn. 275, 283, 440 A.2d 899 (1981). An important aspect of parenting is recognizing and acknowledging the important role which each parent plays in the growth, development and well being of the child. The Plaintiff has failed to do this. She has manifested either an inability or unwillingness to facilitate the Defendant's visitation and relationship with the children. This is evident from (i) the ongoing visitation problems the parties had prior to the relocation, (ii) the Plaintiff's failure to abide by her agreement with the Defendant that Mr. Pope not be present at the visitation exchanges, (iii) her unwillingness or inability to prevent Mr. Pope from (a) interfering in the children's calls with the Defendant and (b) harassing the Defendant in other respects, (iv) her violation of the notice provisions of the Decree as well as her intended permanent removal of the children approximately one thousand miles from the State of Connecticut without affording the Defendant an opportunity to see them prior to their departure, and (v) at least one conversation between herself and Mr. Pope, overheard by one of the children, wherein they expressed their opposition to the Defendant's exercise of visitation with the children. This Court believes that the Defendant's relationship with the children survived the Plaintiff's actions and attitude because of his close physical proximity to the children and his regular contact with them in the past. The Court has grave concerns that the Defendant's relationship with the children will substantially deteriorate absent such close physical proximity and regular contact. The Court does not harbor such concerns, however, if the children have their primary residence with the Defendant. The Defendant, in the limited extended time he has had with the children (primarily this past summer), has demonstrated a CT Page 8443 willingness to facilitate contact between the children and the Plaintiff and her family. The Court also believes that the Defendant has a greater appreciation of the importance of the Plaintiff in the children's lives than does Plaintiff regarding the Defendant's role in their lives.
The Court, after considering all relevant factors bearing upon the best interests of the children, concludes that it is in the best interests of the children that they have their principal residence with the Defendant.
The Court, having taken into account all relevant considerations, is not unmindful of certain important facts which might otherwise call for a different result. Both the family relations officer who appeared before this Court (Mr. McKeever) as well as counsel for the minor children recommend that the minor children continue to have their primary residence with the Plaintiff. This recommendation accords with the preference expressed by the children.[10] Although family relations officers and counsel for minor children are virtually indispensable to the resolution of custody and visitation disputes, and their recommendations are entitled to significant weight, a trial court is bound neither by the recommendations of family relations officers and counsel for the minor children,Yontef v. Yontef, 185 Conn. 275, 281, 440 A.2d 899 (1981);Emerick v. Emerick, 5 Conn. App. 649, 653, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986); nor by the preference of the children themselves. In this case, the family relations officer and counsel for the minor children have focused largely on the close relationship which the children share with the Plaintiff and the nurturing which she provides. Although the Court fully understands the importance of this relationship and recognizes that it will change as a result of the orders entered herein, the Court likewise believes that the relationship will nevertheless be meaningfully preserved and Plaintiff, should she choose to do so, will play an important role in the children's lives. While the recommendation of family relations and counsel for the minor children addresses the short-term interests of the children, the Court believes that the recommendation does not sufficiently reflect (i) the importance of regular, meaningful contact between a child and both of his or her parents and, absent such contact, (ii) the grave risk which relocation in thiscase poses to the preservation of a meaningful relationship between the Defendant and the children. The Court has also been urged to perpetuate the children's current residential CT Page 8444 arrangement because of the circumstances which currently exist in South Carolina (less drinking by the Plaintiff and Mr. Pope, the rental of a home, attendance at church, and the making of friends at school and in the neighborhood). The Court, however, has heard nothing unique about South Carolina and believes that all of the benefits described above likewise exist in Connecticut without jeopardizing or sacrificing the Defendant's relationship with the children.[11]
In this case, the absence of any valid reason for relocation, particularly when coupled with the substantial threat which such relocation poses to the Defendant's relationship with his children, warrants a finding that it is in the best interest of the children that their principal residence be with the Defendant. As this Court has previously stated, the children's interests would be best served by the love, care and guidance of two involved and interested parents with whom they have regular, meaningful contact. Unfortunately, that ideal cannot be achieved in view of Plaintiff's decision to relocate to and remain in South Carolina.
ORDER
(1) The parties, in accordance with their agreement, shall share joint legal custody of the minor children;
(2) The minor children shall have their principal residence with the Defendant, however, the parties are to appear before the Court (personally or through counsel as each may deem appropriate) at 9:15 a.m. on November 13, 1996, for the purpose of coordinating the orderly and sensitive transition of the children's principal residence as aforesaid;
(3) Commencing as of January 1, 1997, the Plaintiff shall have reasonable rights of visitation, conditioned upon her maintenance of the existing bond to ensure her adherence to court orders, as follows:
 (a) Summer vacation commencing ten days after school lets out until ten days prior to the beginning of the next school year;
 (b) Christmas vacation to be split and alternated, such that in even years it will commence upon the beginning of the school CT Page 8445 vacation through December 26, and in odd years to commence on December 26, to conclude two days before school commences again in the new calendar year. (The issue of where the children spend Christmas in 1996 will be addressed at the scheduled hearing referenced above.)
 (c) The children's school winter vacation; and
 (d) Whenever Plaintiff is in Connecticut provided she gives one week notice of her intention to exercise such visitation;
(4) The Plaintiff shall pick up the children for all visitation periods, and the Defendant shall retrieve the children;
(5) Each party shall keep the other apprised of his or her current residence and telephone number as well as any intention to move from their present residence;
(6) The Plaintiff shall, at her expense, have unlimited telephone access to the minor children during reasonable hours;
(7) The Defendant shall provide Plaintiff with the children's school report cards as received, keep her apprised (on a timely basis) of routine medical care of and counseling for the children, and notify her immediately of any serious injury to or illness of the children. Notwithstanding the foregoing, the Plaintiff shall have a right to independently contact the children's schools, physicians and counselors;
(8) Family Relations shall (i) periodically monitor, through home visits or otherwise, the children's principal residential arrangement as set forth above, and (ii) review the issue of custody in the late spring or early summer of 1997 or sooner in the event problems arise (other than problems reasonably anticipated and associated with the transition of the children's principal residence);
(9) Until such time as the Plaintiff obtains gainful employment (written notice of which, including terms and conditions thereof, shall be furnished to the Defendant within CT Page 8446 ten days of obtaining such employment), Plaintiff shall pay no child support;
(10) The parties shall maintain such medical insurance for the minor children as is reasonably available to them through their respective employment or the employment of the respective spouses, with all unreimbursed and uncovered health-related (medical and dental) expenses to be shared and paid equally by the parties; and
(11) The Court, in accordance with the stipulation of the parties made in open court, shall retain jurisdiction of this case with respect all matters affecting of and visitation with the minor children.
Solomon, J.