[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought by the plaintiff wife against the defendant husband. The chief issue in this case has been the issue of the custody of the parties' minor daughter, Olivia, born January 3, 1990, so that she was three and a half years of age at time of trial. The parties were married on July 28, 1990 in Westport, separated early November, 1990 and this action was commenced on July 18, 1991.
Trial of this matter was commenced on April 12, 1993 and has continued for the major portion of 25 trial days. There have been sixteen witnesses in addition to the parties (including the deposition of Jennifer Rogers). There have been 86 exhibits including two video tapes of various activities with Olivia by each of the parents plus numerous photographs, Olivia's handiwork and her art work. The parties have left no stone unturned in the presentation of their evidence. The court believes that it knows Olivia as well as one of its own grandchildren.
The court has had the benefit of the opinions of several experts to include the Family Relations Officer who conducted the family relations study, Dr. Robert Kruger who examined the plaintiff, Dr. Paul Turner, the court appointed psychologist, Dr. Lawrence Loeb who examined the defendant, and Linda Hackett, a nurse psychotherapist whom the plaintiff saw for psychotherapy counseling.
The Family Relations' report, which was seven months outdated at the time of trial, recommended joint custody of Olivia (the child's given name is Anna Olivia) and that Olivia reside primarily with her father and be in his care for five nights out of the week. Dr. Turner's recommendations were "largely consistent with those proposed by [the] Family Relations Counselor." Counsel for the child has requested that the court adopt the recommendations of the Family Relations Officer and of Dr. Turner. While both Dr. Turner and the Family Relations Officer recommend joint legal custody, neither party has tried the case on that CT Page 8325 basis. Each party is seeking sole legal custody so that the court is put to a choice between two fit parents.
While the defendant in his cross complaint of January 3, 1992 did seek custody, he did add "or in the alternative joint legal custody . . . so long as the Defendant has physical custody," so that one of the parties has, in effect, sought joint custody.
As has been noted by the dates set forth earlier in this memorandum, Olivia was born out of wedlock and before the marriage of the parties. The parties met in Paris, France in 1987 while they were both exchange students attending The American College in Paris in their junior year of college. The defendant graduated from Tufts in 1988 majoring in English. The plaintiff graduated from Barnard in January, 1989 majoring in English. Both are now 26 years of age and in good health.
The plaintiff became pregnant the end of March, 1989. At that time she was living with her parents in Westport and the defendant was living with his parents in New York City: There were discussions as to whether or not to have the baby, the plaintiff ultimately deciding to have the baby and the defendant "flip-flopping." At one point he said he was "sorry but he couldn't be a part of it." During the summer in phone conversations, the defendant indicated he did not want to get back together. In the fall, the parties resumed their relationship and at Thanksgiving the plaintiff met the defendant's parents for the first time. They attended LaMaze classes together. After Olivia was born, the plaintiff lived with her parents until early May, 1990. The defendant stayed with plaintiff's parents, also, but for three or four nights per week, spending other nights in New York City at his parents' apartment. In May they moved into an apartment in the Black Rock section of Bridgeport. In July they were married and separated the end of October.
The plaintiff maintained that the defendant never really committed himself to living with her. Until January, 1991, the plaintiff was the primary care giver to Olivia. The breakup of the marriage occurred because the defendant was controlling, manipulative and physically and verbally abusive. As for the latter claims, the plaintiff gave no specific instances of such abuse except that the defendant would "push her out of the way."
At the present time, the parties share custody of Olivia. Each of the parties live at home with her or his parents, and CT Page 8326 Olivia spends an equal amount of time with each family. The defendant is a law student at Cardozo Law School. The plaintiff is employed as an assistant to the chief writer for a daytime soap opera on ABC TV on a part time basis, working 20-25 hours per week. Her weekly net earnings are $326.40, as shown in her financial affidavit. She aspires to be a television writer and believes that such work would give her time to care for Olivia, since much of the writing can be done at home.
The facts contained in the Family Relations report of September 16, 1992 reflect the facts as they occurred in 1991. In January, 1991, the plaintiff started a business with her friend Jennifer Rogers. They ran the cafeteria at Continental Can Company in Norwalk until August. After that, the plaintiff worked as a manager in a restaurant in Westport called Soups On until September, 1992 when she started her present job. It was in January, 1991, that Laura Sukoian was hired as a "nanny" to take care of Olivia during the day until January, 1992. In January, 1992 the plaintiff started Olivia at Barbara Rose's day care in Westport for those times when she could not be with her.
The following excerpts from the report of the Family Relations counselor are appropo:
 Observations by this counsel indicate Olivia to be a precocious, active, and outgoing little girl. She seems perceptive and very aware of the subtleties of her surroundings. Olivia also appears to be picking up tidbits from adult conversation, as most children are prone to do, and using them to the embarrassment of others. This was demonstrated during this counselor's visit to mother's residence, when she showed her opposition to mother's request by referring to her as "you shit" and later by calling father a "dummy." Olivia is clearly an intelligent child whose sensitivity makes her vulnerable to on going parental discord and other negative aspects of her environment.
 Olivia seems emotionally tied to both her mother and father. Both parents profess their love and affection for her and indicate that they want nothing less for her than the best CT Page 8327 that life can offer. While one would not question either parent's love for their child, this counselor notes distinct differences in approach, which surface in terms of each parent's style of relating to Olivia. Ms Firstenberg's emotional connection to Olivia does not seem as open to observation as that between Mr. Firstenberg and his daughter. While mother and daughter engage in many similar activities as Olivia and her father, mother does not seem to share father's enthusiasm and delight at being so intimately involved with Olivia. Ms Firstenberg comments on their different approaches herself, pointing to father's seeming preoccupation with Olivia.
Family Relations report, September 16, 1992, page 6, defendant's exhibit 36.
 Mr. Firstenberg is openly demonstrative in interacting with his daughter. In this regard his involvement seems more intimate from an emotional perspective than that of Ms. Firstenberg. His delight and pleasure with Olivia is clearly observable. He seems genuinely excited by his participation. His discussions also underscore his intense interest in all that concerns Olivia. The reciprocal quality of their interaction is also very evident. Olivia seems "crazy" about her father, to use a word others have chosen to describe their relationship from the child's perspective. This counselor also notes how Olivia's face lights up when father appears. You can see that they are very closely attached. This is not to say that mother's relationship with Olivia is somehow inferior. However, it does seem to underscore the distinctly different approaches of each parent and to point to their unique positions in Olivia's life at this juncture . . . .
 Both of Olivia's parents express their love and affection for her and indicate that her CT Page 8328 welfare is their main consideration. Each parent is concerned that Olivia's needs would not be well addressed if she were to be in the other's primary physical custody. Moreover, each has declared that Olivia would not fare well in the sole custody of the other parent. In fact, granting either parent custody without granting the non-custodial parent substantial contact with Olivia would, in the opinion of this counselor, amount to a substantial change in parenting arrangements that have been in place during Olivia's life.
Family Relations report, September 29, 1992, page 7.
 In spite of their different personalities and approaches, each parent seems to have positive traits that would benefit Olivia as she grows to maturity. Both have demonstrated a rather remarkable ability to work together during the pendency of their dissolution proceedings. They seem to be aware of Olivia's need for their continued cooperation and the importance of their working together in a parenting plan that reflects the changing needs of their family. Counsel for the child remarks of the ability of both mother and father to to [sic] work together, following her suggestions for toilet training. She reports their joint effort in this endeavor resulted in Olivia being quickly and easily trained. The parents demonstrated this ability again during this evaluation by modifying their initial positions and considering various shared parenting arrangements. Such cooperation has been strongly supported by this counselor and also by counsel for the minor child.
 The focus of the dispute at present seems narrowed to the issue of which parent should occupy the position of Olivia's primary custodian. Both mother and father maintain that Olivia's needs would be best served if they were the parent having primary custody. Each expresses ligitmate [sic] concerns CT Page 8329 regarding the other's emotional makeup and approach to Olivia's care. This counselor sees both mother and father as having much to offer their child. As Olivia is very young and as parenting arrangements will need to be modified as she grows to maturity, it is desirable that mother and father work together. No parenting plan works well unless it allows for the constantly evolving needs of the family.
Family Relations report, September 29, 1992, page 8.
The court finds each parent to be a fit custodial parent for Olivia. As has been noted, it is important for each of these parents to have an active parenting role in Olivia's development. Dr. Turner has expressed concern of what he characterized as an unhealthy relationship between the defendant and Olivia. That relationship was characterized as obsessive and one of dependent attachment. He characterized the defendant as a controlling-type person. He has stated in cross-examination that ultimately the plaintiff should have physical custody of Olivia, and in his report, notes that the plaintiff is already the role model for her daughter's emerging identifications and that "the child's increasing interest in her mother's offering should begin to `bloom' by the age of four." (To occur in January, 1994.) He notes: "Olivia's liberal and unrestricted access to her mother should afford her a clear pathway toward a confidently feminine self-image." Again, on page four of his report, he states: "Within the year, however, Olivia should grow increasingly receptive to Ms. Keenan's contrasting style of distributed relationships (i.e., her broader and more diffuse network of friends), pragmatic communications (i. e., more facts than fantasies), and symbolic play for practicing grownup realities (i.e., putting on make-up, trying on dresses, playing with dolls, hostessing sleep-overs, etc. )."
While the court has found that Olivia is blessed with two parents who are fit to have Olivia's custody and who love her very much, the court finds that it is in Olivia's best interest to be in the sole custody of her mother. This is contrary to the recommendation of the court appointed attorney for Olivia, contrary to the recommendation of the Family Relations Officer and contrary to the current recommendation of the court appointed psychologist. Dr. Turner has stated, however, that the plaintiff ultimately CT Page 8330 should have the physical custody of Olivia. Rather than have a change of custody, then, in three to six months, the court finds that it is best for Olivia now to have a change in the present splitting of custody between the two parties.
The court finds that the stability of one home is in Olivia's best interest. The court finds the Westport home environment to be a loving, caring, warm and stable environment for her and the day care arrangements with the maternal grandmother and Barbara Rose to be an extremely satisfactory environment for Olivia. It is vitally important, however, in Olivia's best interest that there be free, open and continuing relationship with her father so that her father can have the very best contact possible, but so as not to interrupt or interfere with Olivia's daily routine.
While the defendant has attacked the plaintiff's lifestyle in the past in an effort to show that she had not shown sufficient care and responsibility for Olivia, the test is not which parent was the better custodian in the past but which is the better custodian now. Yontef v. Yontef, 185 Conn. 275, 283 (1981). The following language from Yontef at page 283 is appropo in this case:
 In the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children of divorce, the court must however take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being. Seymour v. Seymour, supra, 711.
As has been said by our Appellate Court in the case of O'Neill v. O'Neill, 13 Conn. App. 300 at 304 (1988), "the focus of the court's inquiry must be designed to meet the primary objective which is to determine the present parenting ability of the parties."
The court has considered the parenting abilities of each of these parties, both past and present, in making its determination in this case and finds that the plaintiff will better CT Page 8331 foster Olivia's growth, development and well-being.
Remaining for the court to consider are the issues of alimony, property division, support and attorney's fees. In making a determination on these issues, the court must consider the provisions of 46b-81, 46b-82, and 46b-84 of the General Statutes, the Child Support Guidelines and the provisions of 46b-62 of the General Statutes. The court has considered these provisions of the statutes, the Child Support Guidelines, all of the evidence, the parties' financial affidavits and the appropriate case law in arriving at its decision in this case.
While the plaintiff sought alimony in her original complaint, neither party now seeks alimony. (See each parties' Claims for Relief filed at the commencement of the trial.) With regard to the division of property, each party has incurred liabilities far exceeding her or his assets, primarily in connection with this proceeding for legal fees and, in the defendant's case, student loans for his law school education.
On the issue of support, the defendant has, in the past, worked as a paralegal for the New York City law firm of Webster Sheffield at an annual salary of $38,000.00 per year. He has also worked as a waiter. As has been previously noted in this memorandum, he is presently a student at Cardoza Law School. Based upon the defendant's demonstrated earning capacity, the plaintiff has prepared a Child Support Guideline worksheet which shows a calculation of $131.00 per week for the defendant's contribution to support. The court recognizes the defendant's commendable desire to better himself and to prepare himself for a position in life. His father is a successful stock broker in New York City. The defendant's graduate education will certainly serve to permit a greater annual income than he has realized in the past. It would be impossible for him to continue in law school, keep up with his studies and earn a sufficient income to pay $130.00 per week in support. On the other hand, it is only fair and equitable that he contribute something toward Olivia's support. He is certainly capable of working part time in order to do so.
Finally, with regard to the issue of attorney's fees, the fees of all counsel are substantial. The fees for counsel for the child alone amount to $34,000.00 to $35,000.00. The fees incurred by each of the parties have been paid entirely by loans from the parties' parents. On the issue of attorney's fees, the court has considered the provisions of 46b-62 and the factors of 46b-82 of CT Page 8332 the General Statutes.
In addition to the findings noted above, the court finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant is at fault for the breakdown of the marriage.
5. Each of the parties is a fit custodian for the minor child. The plaintiff, however, is the parent who at present and for the future can best provide stability, love and growth for the child in all facets of her development.
6. The defendant is capable of contributing some support for the child even though he is presently attending law school.
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall have sole custody of the parties' minor child, Anna Olivia Firstenberg, born January 30, 1990.
3. Any and all major decisions affecting Olivia's health, welfare, education, guidance, discipline or other aspect of her upbringing shall be made with the participation and involvement of both parents with a view to arriving at a harmonious policy to provide her best interests. In the event of any disagreement upon any of the foregoing, the plaintiff's decision shall prevail.
4. The parties shall exert every reasonable effort to provide free access and unhampered contact between Olivia and each of them and to foster a feeling of love and affection between Olivia and the parties. Each party shall exert her or his best effort to refrain from doing anything to estrange Olivia from the other party, or to discourage her opinion of the other party or any member of the other party's family. CT Page 8333
5. The defendant shall have the right of liberal access to Olivia, including but not limited to weekends and during school vacations, as mutually agreed by the parties and exercisable upon reasonable notice to the plaintiff.
6. In addition to the parenting time noted above, the defendant shall have the following specific parenting time with Olivia:
 a. The first three weekends of each month (except Easter, Mother's Day, the Fourth of July and Labor Day) from 5:00 p.m. on Friday to 7:00 p.m. on Sunday. If said visitation shall fall on a holiday weekend, such as Martin Luther King Day, President's Day, Columbus Day or Veteran's Day, said parenting time shall be extended to include the holiday until 7:00 p.m. on Monday.
b. December 26 through January 1 of each year.
c. One week during each spring.
 d. Four weeks during each summer. The first three years such summer parenting time should be divided into two two week periods. Thereafter, it may be consecutive weeks. Notice of the weeks that the defendant desires to have Olivia with him shall be given to the plaintiff by May 1 of each year.
 e. Alternating holidays including Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve and Christmas Day shall be scheduled as the parties shall agree. In the event they are unable to agree, they shall return to court for further orders in this regard.
f. Father's day.
 g. Olivia's birthdays shall be shared so that each party shall have equal contact with her on that day.
 h. The parties shall continue their present arrangement for pickup and drop off of Olivia, i.e, the defendant picking her up upon the beginning of his parenting time, and the plaintiff picking her up at the end of the defendant's parenting time.
CT Page 8334
7. The defendant shall have unlimited telephone communication with Olivia while she is with her mother and the plaintiff shall have unlimited telephone time with her while Olivia is with her father.
8. It has been recommended that the parties solicit a jointly chosen, qualified mental health professional to serve as Olivia's therapist and to advise each of the parties on making decisions to promote her healthy personality development. While no order is entered in this regard, the parties are encouraged to seek the help of a professional to arrive at the best decisions for Olivia's future development.
9. The defendant shall provide and maintain his existing medical and hospitalization insurance for the benefit of the minor child. All unreimbursed medical, dental, orthodontic, optical, psychological and psychiatric expenses incurred for the minor child shall be shared equally by the parties; except that neither party shall incur any non emergency expense of such nature without consultation with the other party to obtain the other party's approval which approval shall not unreasonably be withheld. The plaintiff shall have the benefit of the provisions of 46b-84(c) of the General Statutes.
10. Each party shall keep the other party informed at all times of Olivia's whereabouts while with the plaintiff or the defendant, including the telephone number and address if other than her or his regular residence. If either party has knowledge of any illness or accident or other circumstance affecting Olivia's health or welfare, she or he shall promptly notify the other. Each of the parties shall furnish copies of any reports from third persons or institutions concerning Olivia's health, education or welfare.
11. The defendant shall pay child support to the plaintiff in the amount of $50.00 per week until such time as he has completed or terminates his law school education. At such time as he again has full time employment, he shall pay child support in accordance with the Child Support Guidelines then in effect. The parties shall exchange Federal Income Tax Returns and W2 statements by April 15th or each year, unless an extension has been granted to one of the parties, in which event W2 statements shall be exchanged by April 15th of each year and federal income tax returns when the returns are available for CT Page 8335 filing. This requirement shall terminate upon termination of the obligation to pay support.
12. The defendant shall name and maintain the plaintiff beneficiary of any life insurance he may have at present or may obtain in the future having a net benefit in the event of his death of $100,000.00 until his obligation to pay child support terminates. At such time as the defendant has such insurance, he shall provide written proof of the same upon the plaintiff's reasonable request.
13. No alimony shall be paid by either party to the other.
14. Such tangible personal property as is in the possession of each of the parties shall be the property of the possessor free of any claim or demand by the other party.
15. Each party shall be entitled to the assets listed in her or his financial affidavit free of any claim or demand by the other party.
16. Each party shall be responsible for her or his own liabilities and shall indemnify and hold harmless the other party from any claim or demand thereon.
17. The parties shall share equally the reasonable fees of counsel for the minor child. In the event there is disagreement regarding counsel's fees or the terms of payment, the parties shall return to court for further orders.
18. Each party shall be responsible for her or his own attorney's fees.
19. The fees and expenses of Dr. Turner as the court appointed psychologist shall be shared equally by the parties.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE