[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court held a hearing on September 7 and 8, 1999, on the defendant mother's motion for modification of custody and visitation dated March 31, 1999, and the motion to modify visitation filed by the attorney for the minor child, Stephen Rose (date of birth November 11, 1983), who will be sixteen years old two months from now, to modify certain visitation orders and conditions set forth in a stipulation agreed to and approved by this court on December 7, 1998 (Owens, J.) and modified by a court order of March 1,
Some of the background facts are not in dispute.
A judgement dissolving the marriage of the parties entered on October 27, 1987 when their minor child was almost four years old.
The plaintiff (father) was awarded sole custody of the minor child.
The defendant (mother) was awarded reasonable visitation with the minor child to include alternate Sundays, two weeks in the summer, and share holidays.
Approximately three weeks following the entry of the judgment, the father and the minor child left the state. CT Page 12439
The minor child has had no contact with the mother for the next twelve years.
In July of 1998, the mother received notice from the State of Texas that the father was seeking to collect a support arrearage.
On August 11, 1998, the mother filed a motion for contempt regarding the visitation issue, and the father countered with his claim for child support arrearage.
On December 7, 1998, the parties entered into a six page stipulation to resolve these motions and agreed, among other issues, that the mother and minor child would participate in six joint counseling sessions supervised by a Dr. David W. Proefrock, Ph.D. in the child's home state of Georgia. These six sessions were to be completed by June 7, 1999.
Two supervised sessions were held with Dr. Proefrock on February 8 and 9, 1999, but they were unsuccessful because the child chose to leave after five minutes.
On March 1, 1999, the court modified the December 7 order and required the child to participate a minimum of forty minutes of the six fifty-minute sessions (Stodolink, J.). The March 16, 1999 session was cancelled unilaterally by the father and no further sessions were held.
The minor child, through counsel, agreed to schedule the six sessions with a new therapist (Ms. Patricia Wiggins) but that proposal was rejected by the mother.
The issues of custody and visitation are governed by §46b-56 of the Connecticut General Statutes which provides in relevant part as follows:
 [T]he court may at any time make or modify any proper order regarding . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . . In . . . modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . . .
CT Page 12440 The court heard testimony from the child on September 7 and 8, 1999. He will be sixteen years old on November 11, 1999. He was well mannered, polite, articulate, and mature for his age. He has no memory of his mother since he was only three years old when he last saw her. He has no existing relationship with her. The court believes his negative feelings towards her were primarily caused by what he has been told by his father and his family. He is opposed to visiting with her under any conditions, and stated he would run away from home if visitation was ordered by this court.
These proceedings over the past year have caused him considerable anxiety and anger to the point of punching out a wooden fence and injuring himself. He failed two subjects the first time, science and math, and will be required to repeat them this coming sophomore year. His school grades were lower this past year. He does plan, however, to go to college after graduating from high school in two years.
The ultimate issue for this court to decide is whether court ordered visitation is in the best interests of this child. Yontefv. Yontef, 185 Conn. 275, 282 (1981). This court believes it would serve no useful purpose nor would it be in his best interest to order him now to mandate a visitation schedule. It would be futile and counter-productive to order visitation when the child is almost sixteen years old, The court finds he is mature enough to make an intelligent preference not to visit with his mother at this time. His preference outweighs her desire to have court mandated visitation sessions. They would be emotionally disruptive to him and impractical since the child is now living and will be attending school in Arizona. The court believes the mother is in good faith in trying to begin a relationship with him, however, will leave this issue of mandated visitation to be decided jointly by the mother and the child voluntarily rather than by court order.
The defendant mother's motion for custody and visitation, dated March 31, 1999, is denied.
The plaintiff father shall retain sole custody of the child and visitation with the mother is modified as follows:
1. The orders detailed in Section II — A-F of the Stipulation of December 7, 1998, as further modified by the court (Stodolink, J.) on March 1, 1999, relating to the six joint CT Page 12441 counseling sessions and related issues are hereby vacated.
2. The mother shall have liberal and flexible visitation schedule, but any future visitations shall be voluntary and agreed to by the minor child.
3. The minor child shall have unlimited telephone and mail access with the mother and may call her any time he chooses.
4. The mother shall be entitled to the academic, medical, hospital or other health records of the minor child pursuant to Sections II — I and J of the December 7, 1998 Stipulation.
5. The mother's obligation to pay the $75 per week child support and open and fund a bank account for the benefit of the minor child as specified in Section III — D and E of the Stipulation of December 7, 1998, shall remain in effect.
6. Article XIII of the parties' Separation Agreement (College Education) is hereby vacated pursuant to Section III — G of the December 7, 1998 Stipulation.
 ORDER
In the defendant (mother's) motion for contempt dated March 31, 1999, she alleges that the plaintiff father wilfully violated an agreement dated December 7, 1998, approved by this court (Owens, J.), in which he agreed to cooperate fully (emphasis added) in effectuating six counseling sessions between the mother, her fifteen year old son, Stephen (date of birth November 11, 1983), and a Dr. David W. Proefrock, Ph.D., a therapist approved by the attorney for the child to supervise these sessions.
By way of background, these parties were divorced in this court on October 27, 1987, approximately twelve years ago (Geen, J.), at which time sole custody of the minor child, Stephen, was granted to the plaintiff (father), with reasonable visitation to the mother. Within three weeks after the judgment, and before the first visitation with the mother, the father left this state with the child, and their whereabouts were unknown to the mother for the next twelve years. The child was living in Georgia with the father, and when this became known to the mother, she filed a motion of contempt in August of 1998 claiming her rights of visitation had been violated over the past twelve years. The CT Page 12442 father countered with a motion for child support which the State of Texas had found was over $66,000 in arrears. The two motions resulted in the parties and the attorney for the child signing a comprehensive six page agreement on December 7, 1989, which was approved by the court (Owens, J.).
At the hearing held on September 7 and 8, 1999, the court considered the testimony of the parties and of the child and finds the following facts:
1. The six counseling sessions were to take place in the office of Dr. Proefrock, Ph.D., in Martinz, Georgia, near where the father and Stephen were living. The mother was required to travel from Connecticut to Georgia to attend the first two sessions on February 8 and 9, 1999.
2. Prior to these sessions, the father had talked with his son and knew he was opposed to attending these counseling sessions with his mother since he had not had any contact with her for the past twelve years. The father was also reluctant to have his son participate in these sessions. However, as agreed, he did transport the son to Dr. Proefrock's office for the first two sessions.
3. Any of the negative feelings the child had towards the mother came primarily from the father or his family, since the child had no recollection of who she was.
4. Prior to these two sessions, the father told the son he could leave these sessions whenever he felt uncomfortable being there.
5. On February 8, the child left the session after about five minutes, and he did the same on February 9.
6. On March 1, 1999, this court modified the December 7, 1988 order to require that a counseling session be fifty minutes, and that the child participate for at least forty minutes of each session.
7. A third session was scheduled for March 16, 1999, and the mother traveled from this state to Georgia to find out from Dr. Proefrock's secretary that the father had cancelled the appointment that morning. CT Page 12443
The father's reason for cancelling the appointment was due to his son's reluctance, opposition, and anxiety these sessions caused him.
The evidence was clear and convincing to this court that the father's cooperation was minimal. Instead of encouraging his son to attend and participate in these sessions with his mother, he did the opposite by telling him he could leave whenever he chose. The child accepted his advice and left after participating for only five minutes. Instead of advising him he could leave whenever he chose, the father had the obligation under his agreement to encourage his son to be an active participant in these sessions in accordance with the court order of December 7, 1998, as modified by the order of March 1. His advice to his son to leave the sessions whenever he chose, and his cancellation of the March 16 session, were clear and wilful violations of their court order of December 7, 1998, that he would cooperate fully in effectuating the six counseling sessions. (See Part II, Subsection F of the Agreement of December 7, 1998.)
The defendant (mother's) motion for contempt is granted. The court orders him to pay her the sum of $500 to reimburse her for the traveling expenses she incurred to attend the session in Georgia on March 16.
The court further orders him to pay her $500 for attorney's fees and costs for bringing this motion pursuant to § 46b-87
of the Connecticut General Statutes. The court finds the attorney's fees and costs to be reasonable for the estimated four hours needed to prepare and present this motion to this court.
The total sum of $1000 shall be paid to her on or before October 15, 1999.
Romeo G. Petroni, Judge Trial Referee