[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15241
In this case both parties have filed post judgment motions to modify custody of their two minor daughters, Jessica born May 1, 1991 and Amanda born December 26, 1992. The plaintiff father hereinafter referred to as father, and the defendant mother hereinafter referred to as mother or Mrs. Johnson, are both in the United States Army. They were married in 1989 in Hawaii and moved to Connecticut in March of 1993. On December 17, 1998 a decree of divorce was issued in the family court of the First Circuit State of Hawaii. The parties in writing agreed to the terms of the decree. In the decree the parties were awarded joint legal and physical custody of the minor children and it further stated that "unless otherwise agreed to by the parties, each party shall have the children for equal periods of time each week". The Hawaii divorce decree was filed in the Superior Court for the Judicial District of New Haven on June 15, 1999.
Presently the children reside with their father in East Haven and the mother resides in North Carolina. Attorney Lynn Pellegrino was appointed guardian of the children and she examined witnesses throughout the trial. By stipulation of the parties she testified as to her recommendations.
Allen B. Rubin, Family Service Counselor, conducted a custody evaluation, prepared a report and testified at trial.
Having considered the evidence, testimony, and demeanor of the witnesses, the court makes the following findings.
Connecticut is the home state of the minor children and the children and their parents do not presently reside in Hawaii; accordingly, the court has jurisdiction to modify the Hawaii decree pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, Public Act 99-186 Sec. 14(a)(3).
The parties separated in May 1998 when the father moved out of the family home located in West Hartford. In April 1999 the mother received orders transferring her to Fort Bragg, North Carolina. The parties agreed in May 1999 that the children would live with their father, who was then CT Page 15242 living in East Haven, for six months while the mother established herself in North Carolina. They further agreed the children would then live with their mother for six months and alternate a six month period with each parent after that. The children began living with their father in June 1999. After the children began living with their father the mother came to believe that he would not honor the agreement to send the children to her at the end of December 1999. This belief was fostered, in part, by what happened when the children accompanied their father on a trip to Hawaii in June/July 1999. The mother paid for half of the children's airfare with the understanding that the children would visit her family in Hawaii. The father did not arrange for the visitation and that upset the mother. On July 15, 1999 she filed a motion for modification of custody seeking custody of the children. On August 3, the mother took the children to Virginia to visit her parents and did not tell the father of her plans until she arrived in Virginia. The father believed the mother was attempting to unilaterally relocate the children and this upset him. On August 6, 1999, the father filed a motion for sole custody. Soon thereafter, the mother returned the children and the father was awarded temporary custody.
The mother is 34 years old and is a staff sargent in the United States Army stationed at Fort Bragg, North Carolina. She has been in the Army for sixteen years and plans to serve a 20 year term of service. She has gone to military schools to improve her prospects for promotion. She was the primary care giver of the children until they went to live with their father. On August 5, 2000, the mother married Darryl Johnson who also is in the United States Army. Mr. Johnson and the mother have never resided together, because he is presently stationed in Pittsburgh, Pennsylvania. Mr. Johnson soon will be transferred to where the mother is stationed. The mother and Mr. Johnson are expecting their first child in March of 2001. The mother clearly loves her children and wants them with her in North Carolina. She has made arrangements for their education and their after school supervision. As part of a family relations study the North Carolina Social Services inspected the mother's residence in Hope Mills and found it more than adequate for the needs of the children.
The father is a master sargent in the U.S. Army presently assigned to a unit in East Windsor. He has orders transferring him to Fort Jackson, South Carolina in April 2001. He joined the Army in 1975 and has two grown children from a prior marriage. He acknowledges that when the couple lived together, the mother was the primary care giver for the children. During the time the children have lived with the father he has become more involved in their daily lives. He helps them with their homework, he attends school conferences, he reads to them and he is active in their extra curricular activities. When the children's behavior changed as a result of their separation from their mother, he arranged CT Page 15243 for counseling with Dr. Fredda Kelly. The father married Mary DePremo, hereinafter referred to as Mary Hayashida in April of 1999. Mary Hayashida has a daughter Kristianna, age 6, who lives with her, Mr. Hayashida and the two Hayashida children in East Haven. In his report Mr. Rubin stated that Mary Hayashida is clearly interested in the Hayashida children. Dr. Kelly testified that Mrs. Hayashida is very active in the children's lives and is concerned about their needs.
The court heard testimony concerning Amanda and Jessica Hayashida from their parents, their teachers, Dr. Kelly, Mr. Rubin, Mary Hayashida and their court appointed guardian, Attorney Lynn Pellegrino. When the children began living with their father it is clear they dearly missed their mother. The mother did not aggressively pursue communication with her children, and the father did not actively facilitate or encourage communication between the children and their mother. The weight of the failure of the mother and father to open a channel of communication between the mother and the children, fell upon and burdened Jessica and Amanda. After a period of adjustment both girls are now doing well at home and in school. They enjoy participating in dance and karate classes. They look forward to and enjoy their weekend visits with their mother.
The children's guardian, Attorney Pellegrino, recommended that the mother and father have joint legal custody, with primary physical custody with the father. She based her recommendation on a number of factors: mother was comfortable with giving the children to their father, the length of time the children have lived with their father, the close relationship the children have with their father, father has addressed their needs including arranging for therapy. She also believes that the children are nurtured, have made a good adjustment, and that the people in the Hayashida household have become a blended family. In response to the court's questions, Attorney Pellegrino stated that the stability of the children was very important in deciding upon her recommendation.
Mr. Rubin recommended that the parents have joint legal custody of the children and that their primary residence be with their mother. He wrote in his report, which was completed on April 28, 2000, "that they clearly should remain in her care, permitting them to preserve the primary parent/child relationships that existed in the past". The court acknowledges the significant relationship the mother and children enjoyed when they lived together, however "the test is not which parent was the better custodian in the past, but which is the better custodian now." (Citations omitted.) Yontef v. Yontef, 185 Conn. 275, 283 (1981). The children have lived with their father since June 1999, a period of almost 18 months. The court finds that during that time they have adjusted to their current arrangement and have established a primary parent/child CT Page 15244 relationship with their father.
When making a custody determination pursuant to General Statutes §§ 46-56(b) "the court shall (1) be guided by the best interest of the child". In determining what is in the present best interest of the Hayashida children, the court is guided by the language of our Supreme Court in the case of Cappetta v. Cappetta, 196 Conn. 10, 16 (1985). "[T]he award of custody requires the trial court to make difficult and sensitive inquiries into the relationships between adults and children. In the search for an appropriate custodial placement, the primary focus of the court is the best interests of the child[ren], the child[ren's]interest in sustained growth, development, well-being, and in thecontinuity and stability of [their] environment." (Emphasis supplied.)
The court concludes that it is in the children's best interest that they continue to live with their father. An award of primary residence with either the mother or the father will require the children to move from Connecticut to North Carolina or South Carolina and such a relocation will disturb their present stability. The court finds that a greater degree of continuity, stability and their state of well being will be maintained if they make this relocation with their father in the company of their blended family. An important ingredient of this blended family is Mary Hayashida. She has the children's trust and respect and has significantly assisted Mr. Hayashida in fulfilling his parenting responsibilities.
Mrs. Johnson was the primary parent and care giver to these children in the past, and the court does not doubt that she is capable of providing a nurturing environment for them. The court does conclude, however, that the demands of her soon to be born child and the period of adjustment which would be necessary when Mrs. Johnson, the children and Mr. Johnson all begin living together in the same household will have a greater impact upon the stability and continuity of the children's environment than would occur if they stay with their father.
 ORDERS
Having considered the provisions of § 46b-56b regarding custody and the provision of § 46b-56a regarding the issue of joint custody, the court modifies the Hawaii decree to the extent necessary and enters the following orders:
1. The parties shall share joint legal custody of the their minor children with primary physical custody with the plaintiff father.
2. the mother shall pay child support to the father in the amount of CT Page 15245 $175.00 per week which is in accordance with the guidelines.
3. The defendant mother shall have rights of reasonable visitation to include every other weekend from Friday after school, or as soon thereafter as is possible, until Sunday evening at 7:30 p.m. If Monday is a school holiday the mother's visit shall be extended until Monday evening at 7:30 p.m.
4. School vacations will be alternated between the parties with the mother having the winter vacation of 2001 and the father having the spring vacation of 2001, alternating annually thereafter.
5. The holiday and summer schedule shall be as follows:
 a. The father shall have Christmas of 2000 from the end of school until December 27th at 12:00 noon. The mother shall have visitation from 12:00 noon December 27, 2000 until the end of the school vacation. Beginning in 2001 the father shall have Thanksgiving from the Wednesday preceding, after school, until Sunday at 6:00 p.m. These holidays shall be alternated annually thereafter in accordance with the above time frame.
 b. the mother shall have six weeks of the children's summer vacation. At her option she may have six weeks continuous or two separate three week periods. She is to notify the father of her summer visitation dates no later than March 1st of each year unless it is impossible for her to do so because of her military obligations. In that event she should give notice of her visitation dates as early as possible.
 c. the mother will have the children on Mother's Day and her birthday and the father will have the children on Father's day and on his birthday.
 d. the parties will alternate the following three day holiday weekends, Martin Luther King Day, Memorial Day, July 4th, Labor Day and Veterans Day.
6. The parties will allow one another reasonable phone access with the children when the children are in their care and will not do anything to interfere with the ability to receive and to make phone calls to the other parent. CT Page 15246
7. Each parent will provide the other with an itinerary of any vacations plans either may schedule with the children one month prior to the planned vacation time.
8. The parties will communicate directly with one another regarding all issues relating to the children and will not use the children to relay information with one another or involve the children in any way with their communications with one another.
9. The parties will be flexible with one another with the visitation schedule to accommodate special events such as family events or special events the children have, in order that the children may attend without regard to the visitation schedule. Each party will give the other reasonable notice of such event so that any changes to the visitation schedule can be made to accommodate the event.
10. The holiday vacation period will supercede the weekend visitation schedule and the parties will alternate the following weekend visitation schedule.
11. The parties are to equally share transportation of the children, in a manner agreeable to them, for the above visitation schedule while they reside in North Carolina and South Carolina.
Domnarski, J.