******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## KATHRYN A. BRIGGS *v.* DAVID L. BRIGGS
## (AC 46158)

Cradle, Suarez and Clark, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving her marriage to the defendant and issuing various orders. *Held*:

1. The trial court did not err in awarding the defendant the entirety of his limited partnership interest in S Co., which had been issued to the defendant by his former employer as part of his compensation: the court expressly stated that it considered the factors listed in the applicable statute (§ 46b-81) in dividing the marital property, and it explained its consideration of several of those factors; moreover, contrary to the plaintiff's claim that the court treated the defendant's interest in S Co. as an "income-producing asset," it was clear from the court's decision that it understood that the defendant's interest was comprised of his past earnings and it treated that interest as property; furthermore, the court was not required to evenly divide the marital property, and its other financial orders sufficiently provided for the plaintiff's future financial support.

2. The trial court did not abuse its discretion in establishing the parenting schedule for the parties' four minor children: contrary to the plaintiff's contention, the court was not required to adopt one of the parenting schedules proposed by the parties or the guardian ad litem, as the wishes and desires of the parties comprised only one factor for the court's consideration; moreover, it was evident that the court carefully considered the proposed schedules and all of the testimony presented in establishing a schedule that it deemed to be in the best interests of the children.

3. This court declined to review the plaintiff's claim that the trial court erred in its orders concerning decision-making authority and expenses related to the extracurricular activities of the parties' children, the plaintiff having raised the claim for the first time on appeal.

Argued May 23—officially released August 20, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Moukawsher, J.*; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed*.

*Dana M. Hrelic*, with whom was *Stacie L. Provencher*, for the appellant (plaintiff).

*Dyan M. Kozaczka*, with whom was *Ross M. Kaufman*, for the appellee (defendant).

*Opinion*

CRADLE, J. The plaintiff, Kathryn A. Briggs, appeals from the judgment of the trial court dissolving her marriage to the defendant, David L. Briggs. On appeal, the plaintiff claims that the court erred in (1) awarding to the defendant the entirety of his interest in Sunriver Fund, LP (Sunriver Fund);[1] (2) establishing a parenting schedule unsupported by the evidence and in contrast to the schedules suggested by both parties; and (3) issuing orders concerning final decision-making authority as to the children's extracurricular activities. We affirm the judgment of the trial court.

The following facts, which are either undisputed or were found by the trial court, and procedural history are relevant to our consideration of the claims on appeal. The parties were married in 2007 and have four minor children born issue of the marriage. The plaintiff commenced this action for dissolution on June 3, 2020.

By way of a memorandum of decision filed on November 9, 2022, following a trial at which both parties and the children's guardian ad litem testified, the court, *Moukawsher, J.*, rendered judgment dissolving the parties' marriage. The court ordered that the parties would share joint legal and physical custody of the children and that they would have a parenting schedule that gave each of them parenting time on both the weekdays and the weekends. The court reasoned that its schedule, which was different than the schedules proposed by

---

[1] The Sunriver Fund is an entity through which the defendant's former employer provides incentive fees and bonuses to its employees in the form of carried interest.

the parties, would prevent the defendant from being a "weekend dad," as the plaintiff had essentially proposed, and that it would require fewer transitions from one household to the other, which the court found was better for the children than the multiple transitions proposed by the defendant. The court awarded decision-making authority over the children's extracurricular activities to one party for spring/fall and to the other for summer/winter with the seasons rotated on an annual basis, despite the plaintiff's request that the parties be required to agree upon all extracurricular activities.

In issuing its financial orders, the court found that the defendant had learned during the pendency of the dissolution proceedings that he would be terminated from his then employment with Sunriver Capital Management on November 30, 2022, and, upon the termination of his employment, the defendant was to redeem in cash the entirety of his interest in the Sunriver Fund, which consisted primarily of bonuses paid as carried interest. The court awarded the entirety of the defendant's interest to him, observing that "it is the money that [the defendant] periodically takes as a capital gain to create the annual income that he is to share with [the plaintiff]" and that "[h]e will keep this money—even though he must take it out of [the] Sunriver [Fund]—so [that] she can keep getting a portion of it."

Despite the defendant's impending unemployment, the court attributed to him an earning capacity of $1.5 million per year, one half of which would likely be taxed as capital gains, leaving him $915,000 per year in after-tax income. The court found that, during the pendency of the dissolution action, the defendant had taken out a mortgage on the marital residence to purchase the plaintiff a $1.4 million home outright. The court ordered that the plaintiff, who stayed home with the parties' four children, would keep the new house and that the

defendant would retain the marital residence, along with the debt associated therewith. The court awarded the plaintiff $6000 per month in child support[2] until the parties' youngest children turn eighteen years old and $3230.77 per week in alimony until November, 2031. In issuing this alimony order, the court rejected several of the expenses the plaintiff listed on her financial affidavit.

On November 28, 2022, the plaintiff filed a motion to reargue/reconsider focused solely on the court's parenting schedule, which the court, *Moukawsher*, *J.*, summarily denied. This appeal followed.

On January 9, 2023, the plaintiff timely appealed. Subsequently, on June 9, 2023, she filed a motion for articulation of the court's dissolution judgment, to which the defendant objected. The court, *Moukawsher*, *J.*, denied the plaintiff's motion, adopting the reasoning provided in the defendant's objection, which will be discussed herein as necessary.

Before turning to the plaintiff's claims on appeal, we first set forth our standard of review and other applicable legal principles. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining

---

[2] Specifically, the court explained: "It finds the presumptive amount in agreement with [the plaintiff's] guideline calculation of $921 a week or $3991 a month. Because the court rejects her suggestion that she receive additional child support as a percentage of [the defendant's] income, it agrees with her that a deviation from the guidelines is merited by the high cost of living in Darien, where both parties live. Therefore, from roughly $4000 a month in child support the court deviates upward to $6000 a month in child support, modifiable but payable until the youngest children [who are twins] become eighteen years old. The deviation includes any adjustment that might otherwise be merited by the parenting time ordered below." Neither party has challenged the child support order on appeal.

whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . . As has often been explained, the foundation for [our deferential] standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Citation omitted; internal quotation marks omitted.) *F. S. v. J. S.*, 223 Conn. App. 763, 785, 310 A.3d 961 (2024). With these principles in mind, we address the plaintiff's claims in turn.

I

The plaintiff first claims that the court erred in awarding the defendant the entirety of his interest in the Sunriver Fund. We disagree.

On November 4, 2022, prior to trial, the parties filed with the court a joint list of stipulated facts pertaining to, inter alia, the Sunriver Fund. They stipulated: "The defendant is currently employed at Sunriver Capital Management in Greenwich, Connecticut but received notice that he will be terminated from Sunriver Capital Management effective November 30, 2022. . . . The defendant's compensation from Sunriver Capital Management consisted of wages, bonuses and incentive fees. Incentive fees were received through Sunriver GP,

[LLC] and are transferred from Sunriver [GP, LLC] to [the] Sunriver Fund . . . . The defendant's [limited partnership] interests in [the] Sunriver Fund . . . and Sunriver GP, LLC, will be redeemed, incident to his termination, at the capital balance as of October 31, 2022. . . . The defendant will receive a payment from the redemption of his [limited partnership] interests in [the] Sunriver Fund . . . and Sunriver GP, LLC, not later than November 30, 2022, which payment will be taxable to the defendant at ordinary income tax rates and investment [tax rates]. . . . The defendant's capital account balance for . . . [the] Sunriver Fund . . . as of August 31, 2022, was $4,348,621."[3]

In issuing its financial orders, the court, as noted, attributed to the defendant an earning capacity of $1.5 million per year. After noting that the defendant had purchased a home for the plaintiff, the court posited: "What other property is available to divide?" The court found that the defendant had "around $182,000 in the bank, $546,000 in stocks, bonds and the like, and around $1.2 million in retirement plans" and ordered the parties to divide those assets equally. The court then explained: "[The plaintiff] also wants [one] half of [the defendant's] interest in [the] Sunriver Fund . . . . His interest in [the] Sunriver Fund . . . is where his carried interest resides. It was in his prior employer's fund and carried over to his most recent employer. It is the money that he periodically takes as a capital gain to create the annual income that he is to share with [the plaintiff]. He will keep this money—even though he must take it out of [the] Sunriver [Fund]—so she can keep getting a portion of it. This money will not be counted when the parties divide accounts under the earlier provisions of this order . . . ." The court indicated that it "will leave [the defendant] the rest of his business interests

_____

[3] According to the defendant's financial affidavit, his interest in the Sunriver Fund had a net value of $2,117,431.

as well. They aren't nearly as substantial, and the court is satisfied that its other orders have provided [the plaintiff] with reasonable funds to make a future with."

In the plaintiff's June 9, 2023 motion for articulation, the plaintiff asked the court to articulate, inter alia, whether it considered the defendant's interest in the Sunriver Fund to be property pursuant to General Statutes § 46b-81, and, if not, why not. The plaintiff also asked the court to articulate the factual and legal bases for its order awarding the entire interest in the Sunriver Fund to the defendant "for the express purpose of paying his support despite assigning [him] an earning capacity."

In his objection to the plaintiff's motion for articulation, the defendant asserted that there was no ambiguity in the court's memorandum of decision that warranted articulation. Specifically, as to the plaintiff's requests for articulation regarding the court's orders pertaining to the Sunriver Fund, the defendant argued that there was no ambiguity in the court's decision in that "[t]here has never been a dispute that the interest in [the] Sunriver Fund . . . is property. The court acknowledged it was property and both parties acknowledged the same in their proposed orders." The defendant also argued that there is no ambiguity as to the legal and factual bases for the court's award of the interest in the Sunriver Fund to him. Specifically, the defendant recounted: "The court found that the money in [the] Sunriver Fund . . . 'is the money that [the defendant] periodically takes as a capital gain to create the annual income he is to share with [the plaintiff].' . . . Additionally, the court found that '[the defendant] can expect around $1,500,000 of annual income in the years to come.' . . . 'The percentage of his income that comes in the form of capital gains has varied in recent years. The court believes it likely that 50 percent of his income—$750,000—will continue to receive capital

gains treatment . . . .' " (Citations omitted.) The defendant further noted that "[t]he court also provided the legal basis for [its] orders when it stated as follows: 'None of the court's rulings . . . will reflect automatic assumptions about gender roles nor will they reflect percentage property division assumptions that may pertain in community property states but not in this state. Instead, our General Statutes §§ 46b-81 and 46b-82 create a fact flexible scheme for considering alimony and property distributions that focuses on what the parties contributed to the marriage, the length of the marriage, the parties' needs, their ages, their health, along with their prospects of making money and acquiring property as shaped by their opportunities, their education, and their work experience. This needed to be said here because several of the factors happen to yield some outcomes that conform to old stereotypes about how courts craft their orders, but they come to that based on these unique facts, not because they fit most circumstances.' . . . [T]he trial court is required to consider the statutory criteria, as the court expressly acknowledged [that] it did . . . . The court has provided both factual and legal bases for its decision and there is no ambiguity that needs clarification." (Citations omitted.) The court summarily denied the plaintiff's motion for articulation and expressly stated that it "agrees with and adopts the reasoning of the objection to articulation filed by [the defendant]."

The following legal principles govern our resolution of the plaintiff's challenge to the court's order pertaining to the defendant's interest in the Sunriver Fund. "In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in . . . § 46b-81 (division of marital property) . . . . Pursuant to § 46b-81 (c), the court shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age,

health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . .

"While the trial court must consider the delineated statutory criteria . . . no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . A trial court . . . need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . .

"Importantly, § 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. . . . On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria. . . . Additionally, [i]ndividual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. . . . [W]e will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Pencheva-Hasse* v.

*Hasse*, 221 Conn. App. 113, 129–30, 300 A.3d 1175 (2023).

"[W]hen a trial court states in its memorandum of decision that it has considered the factors listed in § 46b-81 (c) in fashioning an order distributing marital property, the judge is presumed to have performed [his or her] duty unless the contrary appears [from the record]." (Internal quotation marks omitted.) *Kammili* v. *Kammili*, 197 Conn. App. 656, 672, 232 A.3d 102, cert. denied, 335 Conn. 947, 238 A.3d 18 (2020).

We first note that the court expressly stated that it considered the factors listed in § 46b-81 and expressly explained its consideration of several of them. Therefore, at the outset, we presume that the court properly fulfilled its mandate to equitably distribute the marital assets. The plaintiff nevertheless challenges the court's award of the entirety of the defendant's interest in the Sunriver Fund to the defendant.

The plaintiff's challenge to the court's award of the defendant's interest in the Sunriver Fund is twofold. First, the plaintiff argues that the court's order was based on an erroneous factual finding that the Sunriver Fund " 'create[s] the annual income' " that the defendant needs to satisfy the financial orders. The plaintiff argues that the court erroneously found that the Sunriver Fund was, and treated it as, an " 'income producing asset . . . .' " This argument merits little discussion. It is clear from the court's decision that it understood that the defendant's interest in the Sunriver Fund was comprised of the defendant's past earnings and, accordingly, treated his interest in the fund as property in awarding it to him. The court confirmed this when it expressly adopted the rationale in the defendant's objection to the plaintiff's request for articulation, wherein the defendant posited that the court found that his interest in the Sunriver Fund was property. We thus

reject the plaintiff's contention that the court erroneously characterized and treated the defendant's interest in the Sunriver Fund as an income producing asset when it awarded it to the defendant.[4]

The plaintiff also argues that the court's award of the defendant's entire interest in the Sunriver Fund to the defendant "results in an inequitable windfall to the defendant" that constituted an abuse of its discretion. The plaintiff contends that the court erred in awarding the defendant his interest in the Sunriver Fund in its entirety because it had "divided all other marital property mostly equally between the parties." She contends that the court only mentioned § 46b-81 at the beginning of its decision and that it failed to "expressly state that it considered all of the statutory criteria at any point in its decision." As stated previously in this opinion, it is well established that the court was not required to do so. The court also thoroughly explained the basis for its financial orders, citing many of those statutory factors that the plaintiff complains the court did not consider, including the parties' respective ages, employability and contributions to the marriage.

The plaintiff complains that the court's financial orders, particularly its award of the entire interest in the Sunriver Fund to the defendant, "precludes [her] from meeting the existing standard of living to which she and her family were accustomed." (Emphasis omitted.) The plaintiff's argument ignores the court's other financial orders that provided for her future financial support. First, the defendant took out a mortgage on the marital residence, his home going forward, to purchase a new home for the plaintiff in Darien, where the

---

[4] The plaintiff argues that the court's allegedly erroneous finding was the sole basis for the court's order awarding the interest in the Sunriver Fund in its entirety to the defendant. This argument is belied by the court's express consideration of several of the enumerated statutory factors that govern the distribution of marital property.

parties lived during the marriage, that was unencumbered by a mortgage. The court ordered that the plaintiff would retain that home for herself, free and clear of any claim by the defendant. Although the defendant retained the marital home, that home now was encumbered by a substantial mortgage that did not exist prior to the commencement of this action. Thus, not only did the plaintiff receive $1.4 million of marital assets by virtue of that transaction, but the defendant assumed a liability in that amount. The court also deviated from the child support guidelines on the basis of the high cost of living in Darien, the location of the unencumbered home that the defendant purchased for the plaintiff, and awarded the plaintiff $2000 per month more child support than contemplated by the guidelines. The court also awarded the plaintiff a significant amount of periodic alimony. The court found that the defendant had "around $182,000 in the bank, $546,000 in stocks, bonds and the like, and around $1.2 million in retirement plans," which he ordered the parties to divide equally.

In short, this is not a case in which the plaintiff was left with nothing, and, as stated herein, the court was not required to split the marital assets equally. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 122–23, 161 A.3d 1236 (2017) (court upheld property distribution ratio of 78 percent to 22 percent); *Sweet* v. *Sweet*, 190 Conn. 657, 664, 462 A.2d 1031 (1983) (court upheld distribution awarding 90 percent of marital estate to one party). Given the entire mosaic of the court's financial orders, we are not persuaded by the plaintiff's argument that the court's orders were inequitable. Accordingly, we conclude that the court did not abuse its discretion in awarding the defendant the entirety of the interest in the Sunriver Fund.

## II

The plaintiff next claims that the court erred in establishing a parenting schedule that was "unsupported by

the evidence and in contrast to the schedules suggested by both parties."[5] We disagree.

In considering the parties' access to the minor children, the court set forth the following facts. "The parties and the [guardian ad litem] agree that the . . . children are stable and adaptable. The parties will have joint legal and physical custody of their four children . . . .

"The children have been splitting time between their parents' homes for around two years while the divorce has been pending. Under the agreement they made during the lawsuit, they spend more weekday time with [the plaintiff] and more weekend time with [the defendant].

"[The plaintiff] has more time with the children now, but she does have more time for them. [The defendant] has more time than he used to, but he still does not have the unlimited time [that the plaintiff] does.

"Naturally, [the plaintiff] has this free time only because [the defendant] labors to create it for her. Doubtless, he resents that his obligation to do this also puts him in a subordinate position as a parent. He might even see this subordination as a kind of competition between them that [the plaintiff] wants to win. And perhaps it is. [The plaintiff] is a good parent. In most ways a reasonable parent. But parenting is her only job, and she wants to dominate it. If true, this isn't good for the children, and it isn't fair to [the defendant].

"Dividing time here is a tough question. Perhaps [the plaintiff] should dominate the children's schedule because she does have more time for them. But perhaps she is keeping the children too much from being part of [the defendant's] everyday world, including his work obligations and their school obligations. Indeed, while

---

[5] The three parenting schedules proposed to the court, one by each party and one by the guardian ad litem, all provided for shared legal and physical custody of the minor children and shared several similarities.

the [guardian ad litem] leaned toward the existing schedule with a minor difference, she fully acknowledged the reasonableness of the [defendant's] view and felt the children would fully adapt to it or any other reasonable approach.

"In the end, the court thinks [the plaintiff's] proposed schedule leaves [the defendant] a weekend dad. But [the defendant's] schedule shifts the children around too much. It makes some sense that both parents enjoy weekend time with the children, but his version of it means they can't settle in with a parent for a continuous stretch of days. They bounce around more. This happens too with the [plaintiff's] suggestion of periodic dinners with [the defendant] on Mondays. The court believes that fewer transitions are better and that it is good when those transitions can happen mostly at school to reduce the chilly interactions between the parties the court has heard about."

The court then set forth a parenting schedule rotating every two weeks, which provided more weekday parenting time to the plaintiff and more weekend parenting time with the defendant.[6] The court explained: "This schedule will be simple for the children to learn. It will keep them together for longer blocks with each parent.

---

[6] Specifically, the court ordered the following parenting schedule:
"Week one:
"[The Plaintiff]: Monday from 9 a.m. or pickup at school on school days until 9 a.m. on Thursday or drop off at school on school days. ([The plaintiff] has three overnights).
"[The Defendant]: Thursday from 9 a.m. or pick up from school on school days to Monday at school drop off on school days or 9 a.m. ([The defendant] has four overnights).
"Week two:
"[The Plaintiff]: Sunday at 9 a.m. until 9 a.m. on Thursday or drop off at school on school days. ([The plaintiff] has four overnights).
"[The Defendant]: Thursday from pickup at school on school days or 9 a.m. to Sunday at 9 a.m. ([The defendant] has three overnights)."

[The defendant] does get a lot of his time on the weekend, but [the plaintiff] picks up a Sunday and [the defendant] increases his weekday time."[7]

In the plaintiff's June 9, 2023 motion for articulation, the plaintiff asked the court to articulate, inter alia, the factual and legal bases for its finding that " 'fewer transitions are better' " for the minor children. The defendant filed an objection to the plaintiff's motion, arguing, as to the particular request, that "[t]he [plaintiff] testified herself that 'it is most important for our children to have structure and stability and less transitions . . . .' " He further argued that the plaintiff "also testified that 'our children do best without a lot of transitions.' . . . Additionally, the guardian ad litem testified that, 'based on my conversations with the children's therapists, any schedule that's predictable and has, you know, a limited number of transitions is in their best interest.' . . . It is disingenuous for the [plaintiff] to make assertions to the court that, in turn, the court accepts and essentially adopts and then seek the factual basis for the court subscribing to her own claims. . . . The [plaintiff's] attempt to change her position from trial on appeal is disingenuous and there is no ambiguity for the court to clarify. Therefore, articulation of this issue is unnecessary." (Citations omitted.) As noted herein, the court summarily denied the plaintiff's motion for articulation and expressly stated that it "agrees with and adopts the reasoning of the objection to articulation filed by [the defendant]."

The plaintiff claims on appeal that the court's order was improper in that it was not requested by either party or the guardian ad litem[8] and it was not supported

---

[7] The court also issued orders as to holidays and vacation, which are not at issue in this appeal.

[8] On November 16, 2022, the court issued the following order: "The trial having concluded and with no motions remaining regarding custody, the appointment of the guardian ad litem is hereby terminated."

by the evidence. Our Supreme Court has explained that "[it] has consistently held in matters involving child custody [and visitation] . . . that while the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child [that] must control the decision of the court. . . . In making this determination, the trial court is vested with broad discretion which can . . . be interfered with [only] upon a clear showing that that discretion was abused. . . . Thus, a trial court's decision regarding child custody [or visitation] must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. . . . Under [General Statutes] § 46b-56 (c), the court, in determining custody, must consider the best interests of the child and, in doing so, may consider, among other factors, one or more of the [seventeen] factors enumerated in the provision.[9]

---

[9] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so, may consider, but shall not be limited to, one or more of the following factors: (1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved,

"[T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on our appellate courts], but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference." (Citations omitted; footnote added; internal quotation marks omitted.) *Zhou* v. *Zhang*, 334 Conn. 601, 632–33, 223 A.3d 775 (2020). "[T]rial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . It is a rare case in which a disappointed litigant will be able to demonstrate abuse of a trial court's broad discretion in . . . matters [concerning the care and custody of children]." (Citations omitted; internal quotation marks omitted.) *Yontef* v. *Yontef*, 185 Conn. 275, 279, 440 A.2d 899 (1981).

In challenging the parenting schedule ordered by the court, the plaintiff argues that "the court's decision appears to elevate its own wisdom above not only the respective positions of the parties but also that of the guardian ad litem." She complains that the parenting schedule ordered by the court "was created of its own

except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in section 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision."

volition." This argument ignores the fundamental principle that it is the court's role and responsibility to determine the best interests of the minor children. A court's failure to do so would constitute a dereliction of its statutory duty. The plaintiff's claim that the court should have adopted a parenting schedule that was suggested by one of the parties or the guardian ad litem finds no support in the law. At trial, the court was presented with three proposed parenting schedules, one from each party and one from the guardian ad litem. The plaintiff testified that she did not believe that the schedule proposed by the guardian ad litem was in the children's best interests. She likewise did not support the defendant's proposed schedule. Thus, the plaintiff's real complaint is that the court did not order her proposed schedule. It is axiomatic that the court was not required to do so. As noted previously in this opinion, the wishes and desires of the parents are only one factor for the court's consideration and that factor is overridden by the court's consideration of the best interests of the children, which the court expressly considered.

The plaintiff's claim that the court's schedule was unsupported by the record also is misplaced. As the defendant noted in his objection to the plaintiff's request for articulation, the plaintiff and the guardian ad litem both testified that the children would fare best under a schedule with fewer transitions, and the court credited that testimony and established a parenting schedule that minimized transitions. Additionally, the plaintiff testified that she was better suited to meeting the children's weekday needs and providing the structure and routine that they need during the school week whereas the defendant "shines" on the weekends. She repeatedly emphasized that she is very organized and ensures that the children have the structured routine that they need during the school week. She also testified

that her schedule is flexible and allows her to adapt to changes that occur in the children's schedules. She stated that she was proposing that the defendant get "a disproportionate amount of the weekend parenting time" just as he had by way of the pendente lite schedule. She testified that it was important for the defendant to have more weekend time with the children than she because "[h]is parenting skills during downtime are very strong" and the children enjoy spending their downtime with the defendant.

On the basis of the testimony of the parties and the guardian ad litem, we cannot conclude that the parenting schedule ordered by the court was unsupported by the evidence. Although the schedule ordered by the court was not the exact schedule that either party requested and leaves the plaintiff with minimal weekend time with the children, it is evident from the court's decision that it carefully considered the schedules proposed by the parties and the guardian ad litem and all of the testimony presented and ordered a schedule that it deemed to be in the best interests of the children. We cannot conclude that the court abused its discretion in doing so.

### III

The plaintiff also claims that the court erred by alternating final decision-making authority as to the children's extracurricular activities evenly between the parties because it also required the parties to equally divide the costs of all the children's extracurricular activities rather than only those expenses on which they mutually agreed.[10]

---

[10] General Statutes § 46b-56a provides in relevant part: "(a) For the purposes of this section, 'joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody.

In the proposed orders that the defendant filed with the court and at trial, the defendant asked the court to issue an order affording each party an opportunity to be the final decision maker as to the children's participation in extracurricular activities if they could not come to an agreement. In her trial testimony, the guardian ad litem also recommended that the court issue such an order. In the plaintiff's proposed orders, she proposed that the parties equally share the cost of any agreed upon extracurricular activities. She did not propose any order as to decision-making authority.

In its memorandum of decision, the court explained: "Sometimes the parties can't agree on extracurricular activities and camps. The court agrees with the [guardian ad litem] that alternating final decision-making authority can work here because the parties are both reasonable. Therefore, when they can't agree, in odd years [the plaintiff] will make final decisions about fall and spring activities and [the defendant] will make final

* * *

"(d) In any proceeding before the Superior Court involving a dispute between the parents of a minor child with respect to the custody, care, education and upbringing of such child, the parents shall file with the court, at such time and in such form as provided by rule of court, a proposed parental responsibility plan that shall include, at a minimum, the following: (1) A schedule of the physical residence of the child during the year; (2) provisions allocating decision-making authority to one or both parents regarding the child's health, education and religious upbringing; (3) provisions for the resolution of future disputes between the parents, including, where appropriate, the involvement of a mental health professional or other parties to assist the parents in reaching a developmentally appropriate resolution to such disputes; (4) provisions for dealing with the parents' failure to honor their responsibilities under the plan; (5) provisions for dealing with the child's changing needs as the child grows and matures; and (6) provisions for minimizing the child's exposure to harmful parental conflict, encouraging the parents in appropriate circumstances to meet their responsibilities through agreements, and protecting the best interests of the child.

"(e) The objectives of a parental responsibility plan under this section are to provide for the child's physical care and emotional stability, to provide for the child's changing needs as the child grows and to set forth the authority and responsibility of each parent with respect to the child. . . ."

decisions about winter and summer activities. Each year they will switch the two seasons allocated to them. The parties will evenly divide all extracurricular expenses.''

The plaintiff argues that the court should have put a cap on the cost of extracurricular activities and that the court's order is not fair to her because the defendant has more money than she does to pay for the extracurricular activities and allowing him to have final decision-making authority for one half of each year as to which activities the children will participate in exposes her to a financial burden that improperly diminishes the court's child support order. The plaintiff did not, however, raise these arguments before the trial court. Despite the fact that this issue was clearly raised by the defendant, in both his proposed orders and at trial, and the guardian ad litem,[11] the plaintiff did not, at any time, express opposition to or concern with the imposition of such an order. She did not argue that she would be unduly burdened by an order affording both parties the opportunity to make the final decisions as to the children's extracurricular activities, nor did she ask the court to issue an order imposing a cap on the cost of the children's extracurricular activities. We therefore decline to review this claim that the plaintiff

---

[11] At trial, the guardian ad litem testified: ''The one addition I would make to the joint legal custody paradigm is I would include language that provides for either [the plaintiff] or [the defendant] in an alternating way to be final decision makers over extracurricular activities for the children should they be unable to reach consensus so that there isn't a stalemate with regard to what activities the children can participate in.

''The [defendant] has suggested a paradigm that I think the court should adopt, which is one that provides for an alternating schedule based on spring and summer activities—or, I'm sorry—winter and summer activities with one parent and fall and spring activities with the other and then flipping on the alternate year so that there would be . . . an alternating schedule.'' She explained: ''I'm hoping that they can work cooperatively. It's really a fallback default protocol. You know, they have to work cooperatively to reach consensus and if they can't, then there's a fallback.''

is raising for the first time on appeal.[12] *Dessa, LLC* v. *Riddle*, 223 Conn. App. 457, 464, 308 A.3d 1051 (2024) ("It is well known that this court is not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 60-5. The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.)).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The plaintiff argues that "[t]he court did not articulate the reasons for its orders, including why it did not establish a cap on the fees for any particular extracurricular activity or require that all extracurricular activities be agreed upon by the parties, despite being asked to by the plaintiff." In so arguing, the plaintiff cites to her motion for articulation and her motions for review of the denial of her motion for articulation. Contrary to the plaintiff's representation, she did not, in either of those filings, ask the court to articulate its order pertaining to extracurricular activities.